511 F.2d 1223
 MORGAN ASSOCIATES, a Joint Venture of Terminal Construction
Corporation, et al., Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE et al., Defendants-Appellees,
NAB-Lord Associates, a Joint Venture of NAB Construction
Corp. and Lord Electric Co., Inc., Intervenor-Appellee.
 No. 790, Docket 75--7058.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 10, 1975.
Decided Feb. 25, 1975.
 
 Allen Ross, New York City (M. Carl Levine, Morgulas & Foreman, Jerrold Morgulas, New York City, on the brief), for appellant.
 Patrick H. Barth, Asst. U.S. Atty. (Paul J. Curran, U.S. Atty., S.D.N.Y., Gerald A. Rosenberg, Asst. U.S. Atty., on the brief), for defendants-appellees.
 Eli Saul Cohn, New York City (McDonough, Schneider, Marcus Cohn & Tretter, Franklin E. Tretter, New York City, on the brief), for intervenor-appellee.
 Before HAYS and FEINBERG, Circuit Judges, and HOLDEN, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 Appellant Morgan Associates[1] brought an action in the United States District Court for the Southern District of New York seeking to enjoin the United States Postal Service from awarding to intervenor-appellee Nab-Lord Associates a contract for the reconstruction and mechanization of the Morgan Station Postal Facility in New York City. Morgan's bid on the contract of $54,440,000 was second lowest; Nab-Lord, at a bid of $51,480,000, was lowest. On January 20, 1975, Judge Milton Pollack dismissed Morgan's complaint, concluding that Morgan lacked standing to challenge the Postal Service's imminent award of the contract. This appeal was promptly taken and expedited. We affirm the judgment of the district court but on a different theory.
 
 
 2
 The basis of Morgan's suit is that an award to Nab-Lord would violate the general spirit of competitive bidding on Postal Service contracts and is specifically prohibited by section 18--511 of the Interim Regulations for the Procurement of Construction contained in the Postal Facilities Contracting Bulletin, which provides:
 
 
 3
 No contract for construction of a project shall be awarded to a firm or person that designed the project, except with the approval of the Assistant Postmaster General, Real Estate and Buildings Department or his authorized designee.
 
 
 4
 In support of this legal claim, Morgan alleges substantially the following in its complaint and supporting documents. Nab-Lord's subcontractor for the mechanized mail-handling portion of the construction will probably be Rohr-Plessey Corporation. The president of Rohr-Plessey is Paul Hendrickson, who was until 1970 the Director of Operations of the Department of Research and Engineering of the old Post Office Department.[2] In that capacity, Hendrickson was privy to information regarding the initial planning of the Morgan Station renovation. Also associated with Hendrickson and perhaps with Rohr-Plessey are Knight and Cargill, two of his former subordinates at the Post Office; the latter two were apparently employed by the firm that developed the final design specifications for the mechanization work. It is further alleged that Hendrickson told various persons where the Postal Service stood on their proposals involving the project; that Rohr-Plessey was actually going to be a member of a joint venture with Nab-Lord until shortly before the bidding deadline and thus would have worked closely on the bid; and that Morgan sought a quotation from Rohr-Plessey on the mechanization subcontracting but was ignored.
 
 
 5
 As indicated, Judge Pollack never reached the merits of Morgan's legal claim, holding that Morgan did not have standing under our decision in Edelman v. Federal Housing Administration, 382 F.2d 594, 597 (2d Cir. 1967). In dismissing the complaint, the judge also concluded that the Postal Reorganization Act, see note 2 supra, specifically made the Administrative Procedure Act inapplicable to Postal Service bidding procedures; the judge thought this reflected congressional intent to allow the newly established Postal Service to run its operations as a business would, free from delay caused by judicial acrutiny of bids.
 
 
 6
 The briefs on appeal understandably deal at length with the question of standing. We agree that the issue is a troublesome one in this case. Ordinarily we would feel constrained to decide, as Judge Pollack did, whether a plaintiff has standing to sue before considering the merits of its claim. But in this suit, time is of the essence. The bids have been extended twice, once during the district court proceeding and again, at our suggestion, after oral argument in this court. The bids will expire shortly, and we have been advised the low bid cannot be extended. No doubt construction costs are increasing daily. We know from experience that the Postal Service needs all the help it can get to speed its handling of the mails. In addition, there has been a significant development since Judge Pollack's decision that completely undercuts appellant's position. Because of this unusual need for a prompt decision, and because we consider appellant's legal position on the facts before us so weak on the merits, we affirm the judgment for appellee without passing upon the standing issue.[3]
 
 
 7
 Morgan's case on the merits is that the Postal Service has not complied with its own regulations. Morgan does not allege fraud or bribery. It does not claim violation of any other federal law. Its argument is, in essence, that appellee has violated section 18--511, quoted above. The Postal Service responds that the mechanization plans were not finalized until two years after Hendrickson left the Postal Service. It also argues that award of the contract to Nab-Lord in no way violates section 18--511 because Nab-Lord is not 'a firm or person that designed the project' and neither Hendrickson nor Rohr-Plessey is the bidder to whom the contract is being awarded. Although this argument rests upon the letter, rather than the spirit, of the Regulation, an agency interpretation of its own regulation is certainly entitled to weight. Udall v. Tallman, 380 U.S. 1, 16--17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 8
 Much more significantly, however, appellee points out that section 18--511 is by its express terms permissive. Its ban may be waived if award of a contract to the designer is approved by the Assistant Postmaster General, Real Estate and Buildings Department. The Postal Service has filed an affidavit, sworn to on February 5, 1975, by Alfred C. Maevis, Assistant Postmaster General, Real Estate and Buildings Department, which sets forth all of the facts of the alleged relationship and concludes that an award to Nab-Lord would not violate 'Postal Service policy.' More importantly, the Maevis affidavit states that even if the award were covered by section 18--511,
 
 
 9
 I authorize award to Nab-Lord Associates under the circumstances present in this case due to the great disparity in cost between Nab-Lord and the appellant, approximately three million dollars ($3,000,000).
 
 
 10
 This authorization clearly complies with the proviso of section 18--511. The reason given by Maevis is certainly a rational one and cannot be regarded as an abuse of discretion, even if we assume arguendo that the award by the Postal Service is judicially reviewable.[4]
 
 
 11
 Thus, the Postal Service has fully complied with its own regulation. Morgan also argues that it was inequitable to allow waiver of section 18--511 after bids were submitted rather than advising bidders beforehand that the prohibition of the section would be waived. The argument is without merit. There is no claim that section 18--511 was secret; indeed, it is the basis of appellant's case. By its terms, all bidders were put on notice that it might be waived. Section 18--511 makes clear that a bid may come from a firm with superior information and contemplates a discretionary decision by the Postal Service whether to award a contract to such a firm. At oral argument, appellant claimed that if the Postal Service knew that a particular firm with such knowledge might bid, it had a duty to advise bidders specifically of that fact. But section 18--511 does not so provide and its terms are clearly notice enough.
 
 
 12
 We do not suggest that the Postal Service should grant waivers too readily or that we approve of the kind of relationship between a government department and its former employees which allegedly occurred here. However, regulation of such possible conflicts of interest is for Congress. Now that the Postal Service has waived its Regulation, we can see no basis for prohibiting the award to Nab-Lord.
 
 
 13
 Affirmed.
 
 
 
 *
 Of the United States District Court for the District of Vermont, sitting by designation
 
 
 [1]
 Morgan Associates is a joint venture of four corporations
 
 
 [2]
 By the Postal Reorganization Act of 1970, Congress abolished the Post Office Department and created the Postal Service. Pub.L. 91--375, 84 Stat. 719. It was intended that the Postal Service undertake rapid and major reorganization of both post office facilities and personnel, with particular emphasis on more businesslike operating practices. See, e.g., 2 U.S.Code Cong. & Admin.News, 91st Cong.2d Sess. 1970 at pp. 3649--3654 (H.R.Rep. No. 91--1104)
 
 
 [3]
 As to standing, Morgan argues that Edelman, supra, is distinguishable and asks us to follow the rule enunciated in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 861--73 (1970). The Postal Service argues that Scanwell is inapplicable because (1) the statutory basis for standing in Scanwell was the Administrative Procedure Act, see 424 F.2d at 865, 869; (2) the Scanwell court recognized that explicit congressional preclusion of review would be effective, 424 F.2d at 866; (3) Postal Service operations are excluded from APA requirements by 39 U.S.C. § 410(a); and (4) no other provision of Title 39 indicates that disappointed bidders may seek judicial review. Appellant rejoins that § 410(a) does not exempt this case from the APA, and argues that in any event a court may exercise its general equitable powers rather than relying on a statutory grant to give a disappointed bidder standing. We refrain from entering these lists until a case more compelling on the merits comes before us
 
 
 [4]
 See M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1301--06 (1971). Cf. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969)