**JOHN W. DANFORTH COMPANY,
Plaintiff,**

v.

**VETERANS ADMINISTRATION, Earl Hill, Stanley Buwaj and Hamberger & Co., Inc., Defendants.**

**No. CIV–78–747.**

United States District Court,
W. D. New York.

Dec. 5, 1978.

James Schmit, Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., for plaintiff.

Alva E. West, Asst. U. S. Atty., Buffalo, N. Y., for defendants V. A., Earl Hill and Stanley Buwaj.

David J. Mahoney, Jr., Offermann, Fallon, Mahoney, Cassano & Geller, Buffalo, N. Y., for defendant Hamberger.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

ELFVIN, District Judge.

Plaintiff John W. Danforth Company ("Danforth") seeks to enjoin the Veterans Administration ("VA") and individual defendants from awarding a contract for certain boiler room construction at the VA Hospital in Buffalo, N. Y. to defendant Hamberger & Co., Inc. ("Hamberger"). Plaintiff also seeks declaratory relief, in particular an order (1) declaring that the VA's designation of the construction project as a total small business set-aside be automatically dissolved and (2) directing that the contract be awarded to plaintiff. Defendants move to dismiss the action for failure to state a claim pursuant to Fed.R. Civ.P. rule 12(b)(6). The motions of plaintiff and defendants have been consolidated

in accordance with Fed.R.Civ.P. rule 65(a)(2) and a non-jury trial on the merits has been held.

FINDINGS OF FACT

1. On August 29, 1978, the VA issued a project manual and invitation for bids for the replacement of the boiler plant at the VA Hospital in Buffalo, N. Y.. On or about September 7, 1978, Danforth, Hamberger and several other potential prime contractors received said project manual and invitation for bids. Such bids were to be received and opened September 22, 1978. (Bid Invitation No. 528–49–78, August 29, 1978 [Plaintiff's exhibit # 1].)

2. While the VA asserts that past VA Hospital construction projects had been designated as total small business set-aside projects pursuant to the Small Business Act, 15 U.S.C. § 631 *et seq.,* no such designation appeared in the project manual and invitation for bids. Some time prior to September 14, 1978, the chief of supply services at the VA Hospital, Earl N. Hill, and the contracting officer, Stanley C. Buwaj, learned that notice of a total small business set-aside had been omitted from the project manual and bid invitation.

3. Hill and Buwaj had earlier concluded that the construction project should be designated as a total small business set-aside. Such determination was based upon the availability of a sufficient number of small business contractors (five or six) which they believed could handle the boiler replacement contract of about $3 million and produce a fair price.[1] The number of eligible contractors was estimated through a search of VA records and reliance upon Buwaj's personal knowledge of the Buffalo area construction industry.

4. Because of technical amendments to the bid and the omission of the total small business set-aside from the bid, a pre-bid conference was held September 14th. Some fifteen potential prime contractors, including Danforth and Hamberger, and subcontractors sent representatives to the conference.

5. At the conference the VA's retained architects-engineers explained the various technical amendments and Buwaj indicated for the first time that the project had been designated a total small business set-aside. Hill also explained the ramifications of "labor surplus area" requirements. One of the potential contractors (other than Danforth or Hamberger) inquired as to the definition of a small business. In response, Buwaj discussed the total small business set-aside and read 41 C.F.R. § 1–701–1 regarding the size standard of a small business in the construction industry. In addition, he noted that an amendment to the bid (Amendment No. 2) would be issued the following day and read the notice of the set-aside contained therein. As a result of the technical amendments and set-aside, Buwaj announced that the opening of the bids would be delayed until September 27, 1978.

6. On September 15, 1978, the VA issued Amendment No. 2, said amendment being received by Danforth September 19, 1978. The amendment contained the following notice of a total small business set-aside:

"NOTICE OF TOTAL SMALL BUSINESS–LABOR SURPLUS AREA SET–ASIDE

"(a) GENERAL: BIDS OR PROPOSALS UNDER THIS PROCUREMENT ARE SOLICITED FROM (1) SMALL BUSINESS CONCERNS AND (2) ELIGIBLE ORGANIZATIONS FOR THE HANDICAPPED AND HANDICAPPED INDIVIDUALS UNDER THE SMALL BUSINESS ACT, THAT AGREE TO PERFORM AS LABOR SURPLUS AREA CONCERNS. AWARDS WILL BE MADE ONLY TO ONE OR MORE SUCH CONCERNS, ORGANIZATIONS, OR INDIVIDUALS. BIDS OR PROPOSAL RECEIVED FROM OTHERS WILL BE CONSIDERED NONRESPONSIVE.

"(B) DEFINITION:

"(1) THE TERM 'SMALL BUSINESS CONCERN' MEANS A CONCERN, IN-

---

1. The VA originally estimated the total cost of the boiler replacement contract at $1.5–2.5 million. Such estimate was later revised to $2.8–3.3 million.

CLUDING ITS AFFILIATES, WHICH IS INDEPENDENTLY OWNED AND OPERATED, IS NOT DOMINANT IN THE FIELD OF OPERATION IN WHICH IT IS BIDDING ON GOVERNMENT CONTRACTS, AND CAN FURTHER QUALIFY UNDER THE CRITERIA SET FORTH IN THE REGULATIONS OF THE SMALL BUSINESS ADMINISTRATION (13 CFTR 121.3–E). IN ADDITION TO MEETING THESE CRITERIA, A MANUFACTURER OR A REGULAR DEALER SUBMITTING BIDS OR PROPOSALS IN HIS OWN NAME MUST AGREE TO FURNISH IN THE PERFORMANCE OF THE CONTRACT END ITEMS MANUFACTURED OR PRODUCED IN THE UNITED STATES, ITS TERRITORIES AND POSSESSIONS, COMMONWEALTH OF PUERTO RICO, TRUST TERRITORY OF THE PACIFIC ISLANDS, AND THE DISTRICT OF COLUMBIA BY SMALL BUSINESS CONCERNS: PROVIDED, THAT THIS ADDITIONAL REQUIREMENT DOES NOT APPLY IN CONNECTION WITH CONSTRUCTION OR SERVICE CONTRACTS. * * *"

(Amendment No. 2 of bid invitation no. 528–49–78, September 15, 1978 [Government exhibit # 3].)

7. Subsequent to the pre-bid conference and prior to the submission of its bid, Danforth conducted at least one internal discussion concerning its status as a small business. However, Danforth did not make inquiry of its counsel or the VA regarding such status. Relying upon the bid invitation materials, the amendments thereto, and the award to it of a VA small business set-aside contract in 1977, Danforth chose to certify itself as a small business concern for purposes of the instant bid.

8. On or before September 27, 1978 various prime contractors submitted bids for the construction project and the same were opened on that date. Danforth submitted the lowest bid of $2,959,311 and Hamberger submitted the next lowest bid of $3,029,000.

9. On September 28, 1978, Hamberger contacted Buwaj by telephone and protested awarding the contract to Danforth on the grounds that the latter's profits for the years 1975–77 disqualified it as a small business concern. Hamberger forwarded a letter to Buwaj, confirming the telephone conversation and such size protest. (Letter of Kenneth Zeches, vice president of Hamberger to Stanley C. Buwaj, September 28, 1978 [Government exhibit # 14].)

10. Buwaj informed Danforth of the size protest on or about September 29th and advised that Hamberger's letter of protest was being forwarded to the Small Business Administration ("SBA") for its consideration.

11. At that time or shortly thereafter Danforth informed Buwaj that it questioned the validity of the total small business set-aside. Buwaj suggested that Danforth await the SBA size determination before initiating a protest of the set-aside.

12. On October 31st, SBA forwarded a letter to Buwaj indicating that Danforth did not qualify as a small business concern. The pertinent portion of the letter provides:

"The above solicitation calling for "Boiler Plant Replacement" was set-aside for small business concerns. Inasmuch as there was no size standard in the bid and it is necessary to have a size standard to perform a size determination we have determined this bid to be classified in SIC 1629 and to have a small business size standard of $12-million.

"Inasmuch as John W. Danforth and its affiliates exceeds the applicable small business size standard we have determined it to be other than small business for the above procurement. This determination shall also be applicable to other government procurements that utilize a similar or lower small business size standard."

(Letter from SBA to VA Medical Center, October 31, 1978 [Government exhibit # 12].)

13. On November 6th, Buwaj wrote to Danforth indicating that the SBA had determined Danforth to be other than a small

business concern and that the construction contract would therefore be awarded to Hamberger. (Letter from Stanley C. Buwaj to Danforth, November 6, 1978 [Government exhibit # 13].)

14. Danforth contacted Buwaj November 7, 1977 and informed him that its counsel was preparing a protest letter of the total small business set-aside. Buwaj responded that the VA would withhold awarding of the contract, pending a consideration of Danforth's protest. (Letter of R. Michael Rial to VA Hospital, November 7, 1978 [Plaintiff's exhibit # 3].) The following day, on November 8th, Danforth's counsel, James N. Schmit, forwarded said letter of protest to Earl N. Hill. (Letter of James N. Schmit to Earl Hill, November 8, 1978 [Plaintiff's exhibit # 4].)

15. On November 9th, Danforth contacted Hill by telephone regarding its letter of protest. Hill informed Danforth that its letter of protest was "basically bunk" and that the VA would award the contract to Hamberger. Danforth warned that its protest was substantial and that it would seek a court order enjoining such contract award.

16. Inasmuch as Buwaj was absent from work on November 9th and November 10th (a federal holiday), Hill telephoned Buwaj at the latter's home in the evening of November 9th or 10th. Hill testified he advised Buwaj that Danforth's letter of protest was insubstantial and instructed him to expedite the letter of acceptance upon arriving at work on the 13th.

17. Buwaj testified that on the morning of the 13th he gave said matter his attention. Hill testified that about 9:30 A.M. and during his regular tour of the VA offices, Buwaj informed him that the matter was well in hand. Buwaj testified that shortly before noon, he or his assistant, Carol Gioia, telephoned the president of Hamberger, Francis W. McCabe, apprising him that the letter of acceptance was prepared and inquiring whether McCabe wished the letter mailed to him or if he desired to pick it up at the VA Hospital. Buwaj further testified that shortly thereafter, McCabe visited the Hospital offices and affixed his signature to the acceptance letter. (Letter of Stanley C. Buwaj to Hamberger, November 13, 1978 [Government exhibit # 15].) McCabe's testimony corroborates these events.

18. The testimony of defendants' witnesses also indicated that the payment bond and performance bond forms were provided by VA to Hamberger on the 13th and that such bonds were procured by Hamberger through its insurance agents on the 13th and 14th and tendered to Buwaj on the 14th for his approval. However, my inspection of the performance and payment bonds and of the formal contract showed that each had been typed with the date November 11, 1978, that such dates had been crossed out by hand and "13" written above the same and such changes initialed "cg". Although Saturday the 11th was a nonworking day, thereby supporting defendants' contention that the forms were provided to Hamberger on the 13th, certain aspects of the payment and performance bonds convince me that the testimony of defendants' witnesses is erroneous. First, the bonds were procured by Hamberger through its own insurance agents and notarized on November 11th, such procurement and notarization being actions in which the VA had no involvement. I must and do accept the statements of this officer of the State of New York as true and therefore have no question but that the bonds were completed on Saturday the 11th. Secondly, the bonds multiply the number of contract documents wherein, according to defendants, the date of November 11, 1978 was erroneously employed. This multiplicity confirms my conclusion that the documents were prepared on the 11th rather than being later prepared and the wrong date used.

19. Moreover, the VA is inextricably tied to this action by Hamberger because the bonds incorporate the VA-assigned contract number—V528C–530—whereas prior papers had referred to the project as 528–49–78, the bid invitation number. Buwaj was clear and definite in testifying that such contract number would not have been

assigned until the letter of acceptance was being prepared. Thus, I conclude that the contract number was assigned on Saturday, the 11th, the letter of acceptance was prepared on the 11th, bond forms incorporating that number provided by the VA to Hamberger on Saturday the 11th, and the bonds procured on Saturday the 11th. The bonds themselves, in addition to showing the contract number, set forth the date of the contract as November 11, 1978. From this flurry of activity prior to the handing over of the letter of acceptance on the 13th, it is clear that the VA informed Hamberger on or prior to the 11th of the fast-developing scenario regarding Danforth's protest and intention to seek a temporary restraining order and urged Hamberger to proceed with all possible haste.

20. On the afternoon of the 13th plaintiff's attorney appeared before me with a filed Complaint and an affidavit and a request for a temporary restraining order. The temporary restraining order was granted conditioned on a $100,000 bond [2] and became effective on the 14th when such bond was secured and filed. The TRO and Complaint were served on the VA on the afternoon of the 14th.

21. On November 14, 1978, the VA issued a notification to proceed with the work in connection with the contract, such letter being received by Hamberger on the 16th. (Letter from Stanley C. Buwaj to Hamberger, November 14, 1978 [Government exhibit # 4].) The performance and payment bonds were approved on the 15th and a formal contract executed between the VA and Hamberger on said day. (Government exhibit # 1.)

22. Pursuant to the notification to proceed, Hamberger awarded the following subcontracts on November 16 and 17, 1978:

(1) sheet metal work to Buffalo Sheet Metals, $40,000 (Purchase order no. 1422, November 16, 1978 [Government exhibit # 5]);

(2) general construction work less painting to Westmore Construction, Inc., $550,000 (Subcontract agreement, November 16, 1978 [Government exhibit # 6]);

(3) painting work to P&L Painting, $40,000 (Purchase order no. 1423, November 16, 1978 [Government exhibit # 7]);

(4) boiler accessories to B. J. Muirhead, $88,421 (Purchase order no. 1425, November 16, 1976 [Government exhibit # 8]); and

(5) boilers and boiler accessories to Cleaver Brothers, $326,780 and $35,574 respectively (Purchase order nos. 1424 and 1426, November 17, 1978 [Government exhibits # s 9 and 10]).

23. On November 20th, the motion for a preliminary injunction came on to be heard and, pursuant to my instructions, plaintiff's counsel contacted Hamberger's counsel, David J. Mahoney, Esq., and apprised him of the temporary restraining order enjoining defendants' action. Mahoney then contacted his client, Hamberger, which terminated further work on the contract pending the outcome of the action herein.

## CONCLUSIONS OF LAW

The Small Business Act of 1958 was enacted to protect the interest of small business concerns by insuring that such businesses receive a fair proportion of government property and service contracts. 15 U.S.C. § 631. The Act's legislative purpose is manifested in regulations promulgated pursuant to a provision of the Federal Property and Administration Services Act of 1949, as amended, 40 U.S.C. § 486(c), such regulations requiring that federal agencies set aside contracts for small business concerns when such utilization is feasible. *See,* 41 C.F.R. § 1–1.700 *et seq., as amended,*[3] and 41 C.F.R. § 8–1.700 *et seq.*

---

2. The amount of the bond was fixed sufficiently high to protect the VA against a loss of the acceptability of the Hamberger bid because nothing in the papers then before me showed how long a period of time the VA had within which to accept Hamberger's bid. As it evolved, VA had until November 27th and the original ten-day period for the TRO was extended ten days to December 4th.

3. 43 Fed.Reg. 26004–26009 (June 16, 1978).

In the instant action, plaintiff seeks judicial review of the VA's determination that the construction contract herein should be designated as a total small business set-aside, alleging the VA failed to adhere to applicable regulations in reaching and in providing notice of such determination. Plaintiff further alleges that the VA acted improperly in purportedly awarding the contract to Hamberger, without giving full consideration to plaintiff's pre-award protest. Defendants move to dismiss asserting that the VA awarded the contract prior to the action herein, thereby rendering the action moot, that Danforth failed to exhaust available administrative remedies and that the action is barred for laches.

It is well established that an unsuccessful bidder for a government contract who alleges illegality in the manner in which the agency awarded the contract has standing to seek judicial review of the agency's action. *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); 5 U.S.C. §§ 701–706.[4] Such standing exists whether an action is initiated before or after the awarding of the contract. While any award of a contract to Hamberger bears upon the availability of declaratory or injunctive relief, as discussed hereinafter, such purported award would not render the action moot.

Defendants' contention that the plaintiff lacks standing by failing to exhaust administrative remedies is also without merit. Section 1–2.407–8 of the Federal Procurement Regulations, 41 C.F.R. § 1–2.407–8, sets forth an administrative procedure whereby an unsuccessful bidder can protest to the contracting agency the award of a contract either before or after the awarding of said contract. As noted previously, plaintiff's counsel mailed such a pre-award protest to the VA November 8th. Inasmuch as the VA had the opportunity to consider the merits of the protest and concluded it was "basically bunk", plaintiff has sufficiently exhausted available administrative remedies and thereby has standing to bring the action herein.[5]

The defendants argue that plaintiff's action for injunctive and declaratory relief should be barred for laches. An action for such relief will be barred when the plaintiff does not proceed diligently, but waits until expenses have been incurred or obligations entered into, so that the grant of equitable relief will cause prejudice to the defendants and injure the public interest. *See, Clark v. Volpe*, 342 F.Supp. 1324 (E.D.La.), *aff'd* 461 F.2d 1266 (5th Cir. 1972) and 43A C.J.S. Injunctions § 181. While plaintiff could have brought the action at an earlier time to protest the contract award to Hamberger, it did so with reason-

4. *Edelman v. Federal Housing Administration*, 382 F.2d 594 (2d Cir. 1967), held that an unsuccessful bidder had no standing to challenge the legality of bidding procedures. In its more recent decision of *Morgan Associates v. United States Postal Service*, 511 F.2d 1223 (2d Cir. 1975), however, the same court has cast doubt on *Edelman*, given changes in the law regarding standing, but expressly avoided reaching this issue. Moreover, recent decisions of this circuit have followed *Scanwell Laboratories Inc. v. Schaffer, supra*, and concluded that frustrated bidders have standing to challenge the legality of bidding procedures. *Union Carbide Corp. v. Train*, 73 F.R.D. 620 (S.D.N.Y.1977) and *Schiavone Const. Co., Inc. v. Samowitz*, 451 F.Supp. 29 (S.D.N.Y.1978). *See, also, Airco, Inc. v. Energy Research & Development Administration*, 528 F.2d 1294 (7th Cir. 1975); *Hayes International Corp. v. McLucas*, 509 F.2d 247 (5th Cir. 1975); *Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080 (6th Cir. 1975).

5. Plaintiff also could protest to the Comptroller General against an award of a contract in accordance with General Accounting Office ("GAO") Regulations, 4 C.F.R. Part 20. However, the GAO proceedings are informal and need not be exhausted prior to bringing action in federal district court. *Scanwell Laboratories, Inc. v. Shaffer, supra*, 137 U.S.App.D.C. at 387–88, 424 F.2d at 875–76.

The defendants erroneously contend that plaintiff could have protested the total small business set-aside to the SBA Size Appeals Board, 41 C.F.R. § 1–1.703–2. Said Board has jurisdiction to hear appeals from SBA size determinations. Inasmuch as plaintiff does not challenge the SBA determination that it is other than a small business concern, plaintiff had no duty to exhaust such appeals process before commencing an action in this court.

able diligence after learning of the futility of its administrative remedies. Any injury suffered by the VA and Hamberger resulted directly from their insistence to proceed with the contract in clear violation of a temporary restraining order issued by this court. Inasmuch as plaintiff could not have anticipated the injury so incurred, its action is not barred by laches.

■ Turning to the merits of plaintiff's arguments, plaintiff bears the heavy burden of showing either that the agency's decisions on matters committed primarily to its own discretion had no rational basis or that the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations. *Kentron Hawaii, Limited v. Warner,* 156 U.S.App.D.C. 274, 480 F.2d 1166, 1169 (1973); 5 U.S.C. § 706(2)(A), (D).

■ The initial question is whether the VA followed applicable regulations in designating the construction project as a total small business set-aside and, if so, whether there was a rational basis for this determination. In applying the rational basis standard of review, this court necessarily recognizes that an administrative agency's interpretation of its own regulations must be accorded great deference. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and *M. Steinthal & Co. v. Seamans,* 147 U.S.App.D.C. 221, 230, 455 F.2d 1289, 1298 (1971). A court should not set aside an agency action as arbitrary and capricious solely because the court would have handled the matter differently. There must be, instead, a showing that the agency has "transgressed the statutory boundaries." *M. Steinthal & Co. v. Seamans, supra,* 147 U.S.App.D.C. at 231, 455 F.2d at 1299.

Plaintiff argues that the VA ignored the regulations governing the designation of a total small business set-aside. Section 8–1.706–1 of the Veterans Administration Regulations, 41 C.F.R. § 8–1.706–1, *as amended,*[6] requires that "[e]ach Veterans Admin-

istration contracting officer will comply with the policy of the Federal Government that all purchase requirements be presumed suitable for award to small business unless there are supportable, compelling reasons why awards must be made to other than small business firms. * * *" In making such determinations, the contracting officer must consider whether the project should be designated as a total or a partial set-aside.

Section 8–107–5(b), 41 C.F.R. § 8–107–5(b), *as amended,*[7] regarding total set-asides, provides: "All proposed procurements for construction anticipated to cost between $2,000 and $1,000,000 will be considered as though S.B.A. had initiated a set-aside request. * * *" Where such proposed procurements are anticipated to cost more than $1 million, the determination whether the project should be designated as a total set-aside must be made on a contract by contract basis in accordance with section 1–1.706–5(a) of the Federal Procurement Regulations, 41 C.F.R. § 1–1.706–5(a). That section provides:

"* * * [T]he entire amount of an individual procurement or class of procurements shall be set aside for exclusive small business participation where there is reasonable expectation that bids or proposals will be obtained from a sufficient number of responsible small business concerns so that awards will be made at reasonable prices. Total set-asides will not be made unless such a reasonable expectation exists; however, in the absence of such expectation, a partial set-aside shall be considered * * *."

■ The evidence shows that Buwaj and Hill considered the criteria set forth in 41 C.F.R. § 1–1.706–5(a). Moreover, the evidence shows that their determination that the project should be designated as a total small business set-aside was based upon the VA's records and Buwaj's belief that any one of some five or six Buffalo-area small business concerns could handle the contract and produce a fair price of about $3 million. Thus, plaintiff's argu-

---

**6.** VA Interim Issue 00–78–16 (April 11, 1978).

**7.** *Id.*

ment that the VA failed to observe the procedure set forth in the applicable regulations is without merit. In addition, while I might have handled the matter differently, I find that the VA's designation of the project as a total set-aside does not constitute arbitrary or capricious conduct.

Plaintiff next contends that the VA failed to set forth the requisite notice of a total set-aide in either the invitation to bid or Amendment No. 2 thereto. Section 1–706–5(d) of the Federal Procurement Regulations, 41 C.F.R. § 1–706–5(d), *as amended,*[8] provides that each invitation for bids contain a standard form of notice describing the total small business set-aside and that, in addition, "[t]he applicable small business size standard and product or service classification shall also be set forth in the solicitation." Section 1–706–7, 41 C.F.R. § 1–706–7, further provides:

"If the entire set-aside portion is not procured by the method set forth in § 1–1.-706–5, as to total set-asides, * * * [the total set-aside] is automatically dissolved as to the unawarded portion of the set-aside, and such unawarded portion may be procured by advertising or negotiation, as appropriate, in accordance with applicable regulations. However, prior to issuing an invitation to bid or a request for proposals following the dissolution of a small business set-aside, the contracting officer shall review the required delivery schedule for the supplies or services to be resolicited to insure that the delivery schedule is realistic in the light of all relevant factors, including the capability of small business concerns."

Defendants concede, as the evidence shows, that the invitation to bid contained no notice of a set-aside and that the notice set forth in Amendment No. 2 failed to include the applicable size standard, limiting bidders to those with annual average receipts for the previous three fiscal years not exceeding $12 million. Defendants also concede that Amendment No. 2 contained a truncated version of the standardized notice set forth in § 1–706–5(d). However, defendants urge that the reading of the $12 million size standard at the pre-bid conference and the reference to 13 C.F.R. § 121.-3–8 (which sets forth the $12 million size standard) in Amendment No. 2 placed plaintiff on sufficient notice of the applicable small business size standard. In addition, defendants assert that awarding the contract to Hamberger rendered dissolution of the set-aside impossible inasmuch as no unawarded portion of the contract remains.

While I agree with defendants that the plaintiff was charged with knowledge of the $12 million size standard, section 1–706–7 clearly indicates that strict compliance with the notice of total set-aside criteria is required. Thus I find that the VA has failed to observe procurement procedure required by law. Moreover, as hereinafter discussed, I find unpersuasive defendants' argument that the purported VA award of the contract to Hamberger in order to circumvent this court's temporary restraining order prohibits me from dissolving the total set-aside.

Finally, plaintiff contends that the VA failed to follow required procedure by awarding the contract without first giving full consideration to plaintiff's pre-award protest. The VA asserts that it gave sufficient consideration to the protest, concluding it was insubstantial, and informed plaintiff of its intent to award the contract to Hamberger.

Pursuant to the procedure set forth in Federal Procurement Regulation § 1–2.407–8, 41 C.F.R. § 1–2.407–8, an unsuccessful bidder may lodge a protest against the awarding of a contract to the contracting officer. Section 1–2.407–8(b)(4) further provides:

"Where a written protest against the making of an award is received, an award shall not be made until the matter is resolved, unless the contracting officer determines that:

(i) the items to be procured are urgently required; or

8. 43 Fed.Reg. 26007 (June 16, 1978).

(ii) delivery or performance will be unduly delayed by failure to make award promptly; or

(iii) a prompt award will otherwise be advantageous to the government.

"If award is made * * *, the contracting officer shall document the file to explain the need for an immediate award, and shall give written notice of the decision to proceed with the award to the protester and, as appropriate, to the others concerned."

Moreover, once the protest is resolved by the contracting officer, "[t]he protester shall be notified in writing of the final decision on the written protest * * *." 41 C.F.R. § 1–2.407–8(a)(1).

The evidence shows that the plaintiff's attorney sent a written protest of the award to the VA November 8, 1978 prior to the purported awarding of the contract to Hamberger. While the VA informed plaintiff on November 9th that it considered the protest "basically bunk" and that the contract would be awarded to Hamberger, neither written notice of the VA's decision to deny the protest nor of its intention to proceed with the awarding of the contract was provided. In addition, the perfunctory and offhand manner in which the protest was denied is inconsistent with the general tenor of section 1–2.407–8. Thus, I find that the VA did not adhere to the procurement procedure required by law. Written notice of (1) its denial of the protest or (2) its intention to proceed with the awarding of the contract prior to a decision on the protest should have been provided to the plaintiff.

 Having found that the plaintiff has met his burden of showing a clear and prejudicial violation of the procurement procedure, this court must accordingly fashion an appropriate remedy. As noted by the United States Court of Appeals for the District of Columbia in the leading case of *M. Steinthal & Co. v. Seamans, supra,* the role of a district court in reviewing agency procurement decisions is a limited one. "[E]ven in instances [where plaintiff meets its burden] * * *, there is room for

sound judicial discretion, in the presence of overriding public interest considerations, to refuse to entertain declaratory or injunctive action in a pre-procurement context." *Id.,* 147 U.S.App.D.C. at 233, 455 F.2d at 1301.

Such public interest considerations include the interest in the smooth and expeditious completion of the procurement process and the need for essential government services such as a procurement of military hardware. *Id.,* 147 U.S.App.D.C. at 234, 455 F.2d at 1302. Moreover, a number of courts have denied declaratory and/or injunctive relief for the reason that an unsuccessful bidder has the availability of a damages remedy in the United States Court of Claims. *See, Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080 (6th Cir. 1975); *Wheelabrator Corp. v. Chafee,* 147 U.S.App. D.C. 238, 455 F.2d 1306 (1971); *M. Steinthal & Co. v. Seamans, supra.* However, this remedy does not necessarily provide adequate compensation for a bidder inasmuch as it provides damages only to the extent of bid preparation costs. *Keco Industries, Inc. v. United States,* 428 F.2d 1333, 192 Ct.Cl. 773 (1970), and *Heyer Products Company v. United States,* 140 F.Supp. 409, 135 Ct.Cl. 63 (1956). Thus, while in the ordinary circumstance, this remedy may be sufficient to protect the integrity of the procurement process, I find it is not so in cases such as the action herein.

In the instant action the public's interest in insuring that government contracts are awarded in a fair and equitable manner conflicts with its equally strong interest in avoiding lengthy disruptions in the contracting and procurement process. *See, Union Carbide Corp. v. Train,* 73 F.R.D. 620 (S.D.N.Y.1977). The defendants assert that the latter interests are entitled to greater deference where, as here, challenge is made after the contract has been entered into or contracting work begun. *See, Wheelabrator Corporation v. Chafee, supra,* 147 U.S. App.D.C. at 246–47, at 1314–15, n. 11. However, defendants ignore yet another public interest, that of protecting the integrity of the judicial process and insuring the adherence of government agencies to feder-

al court orders. As noted previously in this court's findings of fact, there is overwhelming evidence that the VA and Hamberger were expecting the lawsuit and an injunction and were collaborating clandestinely and with undue speed in securing bonds and putting forth the letter of acceptance. As there set forth, plaintiff on November 9th notified the VA of its intention to seek a temporary restraining order enjoining the award of the contract to Hamberger. In order to circumvent such order, issued by this court on the 13th and effective on the 14th, the VA provided bond forms, prepared a letter of acceptance and assigned a contract number to project on the 11th, a Saturday, apprised Hamberger of the developing scenario and encouraged it to proceed with haste, which Hamberger did by securing the bonds via its agent on that same day. On the 13th, the following Monday, McCabe travelled to VA Hospital in order to affix his signature on the letter of acceptance on behalf of Hamberger. Moreover, after the temporary restraining order became effective, the VA approved Hamberger's bonds and issued a notice to proceed with work on the contract and signed the formal contract. Hamberger thereupon entered into contracts with various subcontractors.

While I am cognizant of the delay and expense which will be incurred in ordering that the contract award be set aside, which delay and expense ultimately bear upon public interest and public funds, I cannot ignore such egregious conduct by a governmental agency and a contractor. Moreover, the public interest in securing a contract for the replacement of boilers at the VA Hospital, a construction contract of some two years' duration, does not present the emergency need to proceed without delay as that presented in *M. Steinthal & Co. v. Seamans, supra,* where the government sought to procure military hardware.

Accordingly, I conclude that the purported contract award shall be set aside, that the total small business set-aside designation should be dissolved (without prejudice, however, to its proper re-institution within the VA's discretion), and that, if the instant boiler replacement project should be readvertised, such shall be accomplished in accordance with the applicable regulations.

Such relief and result have already been provided and directed by a separate order entered November 30, 1978.