**METADURE CORPORATION and Samuel Hassine, Plaintiffs,**

v.

**UNITED STATES of America, United States Department of Defense, United States Defense Logistics Agency, United States Defense Contract Administration Services Region-New York, Vincent H. Ellis, Robert L. Herriford, Richard W. Miller, Gerald J. Post and Woodrow W. Voughn, Defendants.**

No. 79 Civ. 4588 (RWS).

United States District Court,
S. D. New York.

June 11, 1980.

Stroock & Stroock & Lavan, New York City, for plaintiffs; Andrew B. Schultz, New York City, of counsel.

**1370**

John S. Martin, Jr., U. S. Atty., Southern District of New York, New York City, for defendants; Jane E. Bloom, Asst. U. S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

Metadure Corporation ("Metadure") and Samuel Hassine have filed this action against the United States of America, the United States Department of Defense (the "Defense Department"), the United States Defense Logistics Agency ("DLA"), the United States Defense Contract Administration Services Region—New York ("DCASR–NY") (collectively "the agency defendants") and five individual defendants, Vincent H. Ellis, Robert L. Herriford, Richard W. Miller, Gerald L. Post and Woodrow W. Voughan. Defendants Miller and Voughan have not yet been served.

In the first cause of action, Metadure, the successor corporation to Henry Spen & Co., Inc. ("Spen"), claims that it has been a federal government contractor from 1973 to date. Metadure alleges that at some time after October 1975 the defendants prepared and maintained in their files an unsigned, undated memorandum (the "Memorandum") derogating Metadure's status as a government contractor. The defendants have allegedly refused to disclose the authors of the Memorandum and have failed to remove it from government files. Metadure avers that, at least since promulgation of this Memorandum, the defendants have acted in bad faith and in violation of government regulations in assessing Metadure's status as a government contractor. Metadure claims that the defendants' actions have resulted in irregularities in Metadure's dealings with the defendants on existing contracts and in the improper denial of other contracts. These actions are averred to have caused a deprivation of Metadure's property in violation of its due process rights. Metadure seeks an injunction against continuing due process violations and "requests this Court to determine a fair and reasonable remedy to cure the tainted federal administrative proceedings . . ., said remedy to be determined after plaintiff Metadure has had reasonable discovery in this action and is afforded the opportunity to request a specific remedy."

In its second cause of action, Metadure seeks $2,000,000 in damages for the alleged constitutional violations underlying the first cause. Metadure has moved to withdraw this cause of action.

In the third cause of action, Hassine claims that, by preparing and maintaining the Memorandum which states, allegedly falsely, that Hassine is "skillful in the presentation of half truths" and "views the Government as a cow to be milked," the agency defendants have violated the Privacy Act, 5 U.S.C. § 552a(b), (e) and (g)(1)(A), (C), and (D). Hassine seeks an order directing the agency defendants to cure the violations, and $250,000 in damages and attorney's fees due to defendants' averredly willful conduct.

Hassine, in the fourth cause of action, alleges that the preparation of the Memorandum has violated his due process and privacy rights under the First, Fifth and Ninth Amendments due to the defendants' "wrongfully brand[ing] and prejudic[ing]" him "without a full and fair opportunity to be heard." Hassine seeks an injunction against continued violations of his constitutional rights and "at least" $250,000 in damages.

A. *Subject Matter Jurisdiction over Counts One and Two.*

The defendants have moved to dismiss Metadure's first and second causes of action for lack of subject matter jurisdiction. The defendants contend that the allegations of these counts arise from the contractual relationship between Metadure and the agency defendants, and that exclusive jurisdiction over these claims exists in the Court of Claims. Metadure claims that jurisdiction exists in this court under 28 U.S.C. § 1346 (the Tucker Act), 28 U.S.C. § 1331 (federal question statute), or under 5 U.S.C. § 702 (Administrative Procedure Act). Since the individual defendants are sued not in their individual capacities, but for specific relief arising out of their official duties, *see Larson v. Domestic & Foreign*

*Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Estate of Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978), the determination of subject matter jurisdiction stands on the same footing for the individual defendants as for the agency defendants.

Metadure argues that it does not wish to litigate specific contract disputes in this court, but rather seeks to enjoin a pattern of unconstitutional governmental conduct which has manifested itself in the contractual relationship between itself and the agency defendants. Metadure has now moved to withdraw its claim for money damages, and urges that only this court has power to grant the injunctive relief essential to cure the wrongs allegedly committed by the agency defendants.

Under the Tucker Act, the Court of Claims has exclusive jurisdiction over claims in excess of $10,000 against the United States and its agencies

> founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States  .   .   .

28 U.S.C. §§ 1346(a)(2), 1491. For claims arising prior to March 1, 1979, the district courts have concurrent jurisdiction with the Court of Claims to decide cases involving claims less than $10,000. For claims arising after that date, jurisdiction over contract claims covered by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.*, has been removed from the district courts. 28 U.S.C. § 1346(a)(2).

■ The Tucker Act, by its terms, confers jurisdiction on the Court of Claims to adjudicate constitutional issues, as well as those arising out of contractual disputes. 28 U.S.C. § 1491; *South·Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910, 914 (2d Cir. 1976). However, the Court of Claims has only limited power to grant equitable relief. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Estate of Watson v. Blumenthal, supra.* Similarly, when exercising jurisdiction under section

1346(a)(2), a district court is limited to awarding damages, and cannot grant injunctive relief. *Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (per curiam); *Ostrer v. Aronwald*, 434 F.Supp. 379, 382 (S.D.N.Y.1977).

Accordingly, this court has no jurisdiction under the Tucker Act over Metadure's first cause of action which seeks an as yet unspecified form of injunctive relief. *Bruzzone v. Hampton*, 433 F.Supp. 92 (S.D.N.Y. 1977), in which the district court retained jurisdiction over a former government employee's claims for injunctive relief while dismissing his claims for back pay in excess of $10,000, is clearly distinguishable. Unlike this case, the Court of Claims in that case had express power under 28 U.S.C. § 1491 to grant the injunctive relief sought by the plaintiff.

■ No jurisdiction under the Tucker Act exists over Metadure's second cause of action for $2,000,000, since the damages asserted far exceed the $10,000 limit for concurrent jurisdiction specified in the Tucker Act. *TM Systems, Inc. v. United States*, 473 F.Supp. 481 (D.Conn.1979).

■ It has been held that the Tucker Act provides the exclusive basis for assertion of contract claims against the United States, *see Polos v. United States*, 556 F.2d 903, 905 (8th Cir. 1977); *International Engineering Co. v. Richardson*, 512 F.2d 573 (D.C.Cir. 1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976). Therefore, if Metadure's claims in this action are properly classified as contract claims, the availability of a remedy under that Act forecloses assertion of jurisdiction by this court under another jurisdictional statute. *Estate of Watson v. Blumenthal, supra* at 928. Metadure cannot escape the limitations on relief available in a Tucker Act suit by masquerading its claims as suits for injunctive or declaratory relief. *Hoopa Valley Tribe v. United States*, 596 F.2d 435, 445 (Ct.Cl. 1979); *Warner v. Cox*, 487 F.2d 1301 (5th Cir. 1974); *Ove Gustavsson Contracting Co. v. Floete*, 278 F.2d 912 (2d Cir.), *cert. denied*, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960).

In *Estate of Watson v. Blumenthal, supra,* the plaintiff sought an injunction requiring the Secretary of the Treasury to redeem certain United States Treasury bonds. The plaintiff claimed its action was one to review the actions of a federal agency under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* so that jurisdiction existed under 28 U.S.C. § 1331. The court held that § 702 of the APA did not constitute a general waiver of sovereign immunity, a ruling which is not at issue in this case.[1] The court concluded that in amending section 702 of the APA in 1976, Congress did not intend to abrogate the rule that "the Tucker Act impliedly forbids relief other than the remedy provided by the Act," *id.* at 933, but provided for a claim under the APA "only if a suit in the Court of Claims under its jurisdiction, § 1491, were inadequate." *Id.* at 934. The court ruled that an action in the Court of Claims did provide an adequate remedy for the plaintiff despite the unavailability of injunctive relief in that forum, "thus precluding APA review." *Id.* at 934. It was also held that no jurisdiction existed under the mandamus statute, 28 U.S.C. § 1361, since

> "Congress never intended § 1361 to be interpreted so as to allow the extraordinary writ of mandamus to be converted into a device for obtaining piecemeal solution of contractual disputes to which the United States is a party."

*Id.* at 935, *quoting Massachusetts v. Connor,* 248 F.Supp. 656, 660 (D.Mass.), *aff'd per curiam,* 366 F.2d 778 (1st Cir. 1966).

In *American Science & Engineering, Inc. v. Califano,* 571 F.2d 58 (1st Cir. 1978), the plaintiff sought to enjoin HEW from licensing manufacturers other than plaintiff to produce a device created by plaintiff under contract with HEW. The plaintiff, claiming that HEW's actions had violated federal regulations and plaintiff's due process rights, invoked 5 U.S.C. §§ 701 *et seq.* (APA), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (mandamus) as bases for jurisdiction. The court held that no

jurisdiction existed, since "it is clear that this is essentially a contract dispute," *id.* at 61. The court specified that "other courts have consistently rejected attempts to cast a contract dispute in different terms so as to subject it to the jurisdiction of the district court." *Id.* With regard to plaintiff's attempt to rest jurisdiction upon the APA, the court noted that the 1976 "amendment was intended to have no impact on the jurisdictional limitations imposed by the Tucker Act" *id.* at 63, and further specified that the "APA cannot be used to obtain indirectly the injunctive or declaratory relief the Court of Claims could not provide directly." *Id.* at 63 n.6.

In *International Engineering Co. v. Richardson, supra,* the plaintiff had entered into a contract with the United States Air Force under which it was required to surrender certain technical data to the government. A controversy developed as to the scope of these surrender rights, and the contractor commenced an action to enjoin the "arbitrary and capricious" actions of the Air Force. The circuit court ruled that no jurisdiction existed over this claim, since it had as its basis the interpretation of the contract. Accordingly, exclusive jurisdiction existed in the Court of Claims.

A careful perusal of Metadure's first cause of action demonstrates that all of the allegations which are claimed to result in constitutional violations are closely connected with Metadure's status as a government contractor. These allegations include (a) delays in remitting progress payments; (b) improper declarations of contractual defaults and contractual termination; (c) bad-faith negotiations of contractual disputes; (d) improper declarations of set-offs due Metadure; (e) refusal to defer demand for payment from Metadure during a reorganization proceeding under Chapter XI of the federal bankruptcy laws; and (f) improper denial of federal government contract awards. An adjudication of most of these claims depends upon an interpretation of

---

1. The defendants have not asserted the defense of sovereign immunity in this motion, presumably because that defense does not bar a court from granting specific relief against an official whose actions exceed his constitutional or statutory authority. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 702, 69 S.Ct. 1457, 1467, 93 L.Ed. 1628 (1949).

Metadure's contracts with the United States. Metadure does not deny that most, if not all, of these claims either have been, or are in the process of being, litigated before the Court of Claims and before the ASBCA.

■ Metadure may not, by the simple expedient of lumping its contract claims together and denominating them a constitutional violation, escape the procedural limitations of the Tucker Act. It is true that unlike *International Engineering v. Richardson, supra,* and *American Sci. & Eng. v. Califano, supra,* the claims in this action are not alleged to arise from one specific contract, but are claimed to have resulted from a series of contractual disputes. Yet this agglomeration of disputes from different contracts does not alter the essential nature of Metadure's claims. Metadure either has had or will have a full opportunity to litigate each of its contractual disputes either before the Court of Claims or before the ABSCA. To permit a government contractor to assert an independent cause of action based on all of these disputes considered together would subvert the jurisdiction of the Court of Claims, *see Estate of Watson v. Blumenthal, supra,* at 934, and might enable it to gain duplicate relief for the same alleged wrong.

■ The claim that the defendants' actions have improperly deprived Metadure of government contracts also fails to state a claim under the APA. In *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir. 1970), the court held that an unsuccessful bidder for a government contract which could make a *prima facie* showing of illegality in the manner in which the agency awarded the contract is entitled to review of the contract award process in district court under the APA. *See John W. Danforth Co. v. Veterans Administration,* 461 F.Supp. 1062, 1069 (W.D.N.Y.1978). However, the allegations in this case are vague and conclusory. There is no indication as to which contracts Metadure may have failed to gain as a result of improper agency action, or indeed what the improper actions of the agency defendants were. There is no basis for a finding of jurisdiction under the APA based on these imprecise, conclusory allegations.

It is true that the Court of Claims will have no power to grant injunctive relief should it determine that Metadure's contract claims are meritorious. *See Richardson v. Morris, supra; Glidden v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 (1962) (Harlan, J., announcing the judgment of the Court). Nevertheless, in similar cases, the courts have consistently held that the remedy of damages is sufficient to protect the plaintiff's interests. *See Sea-Land Service, Inc. v. Brown,* 600 F.2d 429 (3d Cir. 1979); *American Sci. & Eng. v. Califano, supra* at 62; *International Engineering Co. v. Richardson, supra* at 580; *Alabama Rural Fire Insurance Co. v. Naylor,* 530 F.2d 1221 (5th Cir. 1976).

Since Metadure's claims are essentially contract claims founded upon its contracts with the agency defendants, this court has no jurisdiction to adjudicate these claims. Accordingly, Metadure's first and second causes of action are dismissed. Because of the result reached, it is unnecessary to consider the individual defendants' argument that no personal jurisdiction exists under 28 U.S.C. § 1391(e) and New York C.P.L.R. § 302(a).

B. *Motion to Dismiss Hassine's Claims under the Privacy Act.*

■ The agency defendants claim that Hassine's allegations fail to state a claim under the Privacy Act. They contend that the statements in the Memorandum concern Hassine only in his "entrepreneurial capacity," and not in his "personal capacity," and that the Privacy Act provides a cause of action only for individuals who allege that the Government is holding information which concerns their personal lives.

The principal support for the claimed entrepreneurial/personal distinction is the holding in *Shermco Industries, Inc. v. Secretary of the United States Air Force,* 452 F.Supp. 306 (N.D.Tex.1978), *rev'd on other grounds,* 613 F.2d 1314 (5th Cir. 1980), and Guidelines promulgated by the Office of Management and Budget pursuant to sec-

**1374**

tion 6 of the Privacy Act. 40 Fed.Reg. 28,948 (1975).

However, in *Zeller v. United States*, 467 F.Supp. 487, 499 (E.D.N.Y.1979), the court refused to adopt the claimed distinction and stated,

> . . . [T]he statutory language, when viewed in the light of the legislative history and Congress' express findings and statement of purpose, simply does not support the "entrepreneurial" exclusion from the Privacy Act that is embodied in the OMB guidelines and urged by defendants here. Correctly construed, the Privacy Act extends to all information contained within an agency's system of records that pertains to an individual and can be retrieved by the individual's name or by some identifier assigned to him, without regard to the content of the information or whether it pertains to the individual's business activities.

In *Florida Medical Assoc. v. Dep't of HEW*, 479 F.Supp. 1291, 1307–1311 (M.D. Fla.1979), the court, after a meticulous review of the legislative history and goals of the Privacy Act, also rejected the proposed exclusion of information concerning individuals in their entrepreneurial capacities.

The court concurs with the analyses in *Zeller* and *Florida Medical Ass'n*. Aside from the obvious difficulties in applying the proposed distinction, the definition of "individual" in the Privacy Act, 5 U.S.C. § 552a(a)(2), provides no basis for excluding information concerning individuals in their entrepreneurial roles from the statute's requirements. Indeed, the definition of "record" in the Privacy Act encompasses

> any item, collection or grouping of information about an individual . . . , including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name . . . .

The broad language of this definition negates the contention of the agency defendants that a distinction should be recognized between entrepreneurial and personal information.

The attempt of the defendants to analogize the scope of the Privacy Act to exemp-

tion 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6), also does not further their position since the distinction drawn by the courts under that section is between the interests of individuals and those of corporations or businesses, *National Parks and Conserv. Assoc. v. Kleppe*, 547 F.2d 673, 685 n.44 (D.C.Cir.1976), and not between individuals in their personal and entrepreneurial capacities. *See Florida Medical Ass'n v. Dep't of HEW, supra* at 1310.

■ The agency defendants next contend that they have complied in full with their obligations under the Privacy Act and thus Hassine's Privacy Act claim must fail. Insofar as this contention depends upon materials outside the pleadings, it must be considered as a motion for summary judgment, Fed.R.Civ.P. 12(c), 56; *Rodriquez v. Bd. of Educ. of Eastchester*, 620 F.2d 362 (2d Cir.1980).

The agency defendants have submitted a letter dated August 26, 1977 from General Herriford, then Commander of DCASR–NY, to Hassine's attorney stating that at Hassine's request, the Memorandum would be removed from Metadure's contract file and all copies of it would be destroyed. In a December 20, 1977 letter from Thomas Hillin, assistant counsel for DLA, to Hassine's counsel, an additional offer was made to destroy the offending document. Joseph Marcotullio, counsel for DCASR–NY, has submitted an affidavit stating that although Metadure and Hassine never accepted these offers to destroy the Memorandum, and never submitted any information to rebut the statements contained therein, General Herriford, on May 26, 1978, ordered all copies of the Memorandum destroyed "with the exception of a copy to be retained in the Office of Counsel for possible use in future litigation." Marcotullio states that the order was carried out.

Hassine has submitted no evidence to rebut the statements in Marcotullio's affidavit, but claims that the affidavit leaves open the possibility that copies of the Memorandum were distributed to DLA by DCASR–NY and that these copies would not have been subject to General Herriford's order.

■ The uncontradicted affidavit submitted on behalf of DCASR-NY establishes that DCASR-NY, by destroying all copies of the affidavit but one to be used in litigation, *Stiles v. Atlanta Gas Light Co.*, 453 F.Supp. 798 (N.D.Ga.1978), has complied in full with the Privacy Act. The court agrees with DCASR-NY that the Privacy Act confers no right on a plaintiff to discover the author of alleged offensive material. Therefore, summary judgment is granted in favor of DCASR-NY on Hassine's Privacy Act claim.

■ DLA claims that its offer to destroy the Memorandum, even though never accepted by Hassine, constitutes compliance with the Act. The court agrees. Section 552a(g)(1) of Title 5 provides that an individual may file suit against an agency only when the agency either fails to amend a record upon request under section 552a(d)(3), refuses to comply with a request for information under section 552a(d)(1), fails to maintain a record with requisite accuracy, or otherwise refuses to comply with the provisions of the Privacy Act. In this case, the evidence submitted establishes only that Hassine complained about the Memorandum to DLA and that DLA agreed to destroy the record as soon as Hassine gave his approval. In short, DLA offered Hassine precisely the relief to which he was entitled under the Privacy Act, and Hassine refused to accept it. Under these circumstances Hassine cannot claim to have been aggrieved by any action taken by DLA in contravention of the Privacy Act, and DLA is entitled to summary judgment on the third cause of action.

■ Although the Defense Department and the United States are nominal defendants on the third cause of action, plaintiff Hassine does not allege that he has exhausted his administrative remedies with respect to these defendants under the Privacy Act, a pre-requisite to bringing an action in district court. 5 U.S.C. § 552a(d)(3), (g)(1). *See Harper v. Kobelinski*, 589 F.2d 721 (D.C.Cir.1978). According-

ly, Hassine's third cause of action against these defendants is dismissed.

### C. *Hassine's Fourth Cause of Action.*

■ Hassine claims that the preparation and maintenance of the Memorandum violated his constitutional rights under the First, Fifth and Ninth Amendments by wrongfully branding and prejudicing him without a full and fair opportunity to be heard.[2]

■ The apparent claim is that the injury to Hassine's reputation which allegedly resulted from the characterizations of him contained in the Memorandum without providing him an opportunity to contest such characterizations, violated his constitutional rights.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court rejected a similar claim. In *Paul*, the plaintiff alleged that the circulation by city and county police departments of a flyer which warned businessmen to beware of certain individuals "known to be active" shoplifters and contained a photograph of and information about plaintiff, violated his constitutional rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. The Supreme Court held that these allegations failed to state a claim under 42 U.S.C. § 1983. The Court specified that an injury to reputation, though it might provide a basis for a state cause of action for defamation, does not constitute a deprivation of "liberty" or "property" which is "sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161. The Court also rejected the contention that any injury to plaintiff's reputation resulting from publication of the flyer had caused a violation of his rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments, stating that this claim was "far afield" from the

---

2. Although the defendants have not specifically addressed Hassine's fourth cause of action, this court has authority to consider facial deficien-

cies in that claim. *See Myers v. Davis*, 467 F.Supp. 8 (E.D.Tenn.1978); 2a *Moore's Federal Practice* ¶ 12.14 at 2335 (2 ed. 1979).

claims of deprivation of "fundamental" freedoms or rights "implicit in the concept of ordered liberty" which had given rise to constitutional protection in prior cases. *Id.* at 713, 96 S.Ct. at 1166.

Hassine's fourth cause of action is even less compelling than the cause of action asserted in *Paul v. Davis.* Not only are the statements in the Memorandum less stigmatizing than those considered in *Paul,* but there is no evidence that the Memorandum, unlike the flyer in *Paul,* was circulated publicly or was even consulted by government contracting agents. Therefore, just as the claim in *Paul v. Davis* under section 1983 was held not to state a cause of action, so the claim in this case under 28 U.S.C. § 1331 is legally deficient. For that reason the motion to dismiss the fourth cause of action is granted.

D. *Conclusion.*

For the foregoing reasons, the first and second causes of action are dismissed for lack of subject matter jurisdiction. Summary judgment is granted on Hassine's third cause of action against DLA and DCASR-NY. Hassine's third cause of action against the other agency defendants is dismissed for failure to exhaust administrative remedies. Hassine's fourth cause of action is dismissed for failure to state a cause of action. The defendants are ordered to submit a judgment, on notice, consistent with this opinion, within ten days.

IT IS SO ORDERED.