HERBERT F. DARLING, INC., Plaintiff,

v.

Eckardt C. BECK, Regional Administrator, Region II, United States Environmental Protection Agency, Town of Cheektowaga, New York State Department of Environmental Conservation, and Amadori Construction Company, Inc., Defendants.

No. Civ. 77–517.

United States District Court,
W. D. New York.

Oct. 12, 1977.

Brown, Kelly, Turner, Hassett & Leach, Buffalo, N. Y. (Frederick D. Turner, Buffalo, N. Y., of counsel), for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (C. Donald O'Connor, Buffalo, N. Y., of counsel), for defendant Eckardt C. Beck, Regional Administrator.

John V. Rogowski, Buffalo, N. Y., for defendant Town of Cheektowaga.

Louis Lefkowitz, Atty. Gen., New York City (Maryann Freedman, Buffalo, N. Y., of counsel), for defendant N.Y.S. Dept. of Environmental Conservation.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Evan James, Buffalo, N. Y., of counsel), for defendant Amadori.

CURTIN, Chief Judge.

In this case, the plaintiff, Herbert F. Darling, Inc. (Darling), challenges the Town of Cheektowaga's decision to award a federally funded construction contract to Amadori Construction Co., Inc. (Amadori), claiming that Darling was the low bidder on the contract. Darling has moved to preliminarily enjoin the Town and Amadori from proceeding with the contract, and the defendants have responded by moving for summary judgment.

In accordance with Rule 65(a)(2) of the Federal Rules of Civil Procedure, the two motions have been consolidated. The court has carefully considered the supporting papers submitted by the parties, and the oral arguments of counsel. For the reasons stated below, Darling's motion for preliminary relief is denied, and summary judgment is granted to the defendants.

On June 30, 1976, Region II of the United States Environmental Protection Agency (E.P.A.) awarded a construction grant to the Town of Cheektowaga, New York, for the construction of approximately 9,980 feet of sanitary sewer pipe and related work. The Town solicited bids on the contract based on nineteen bid items. The bidding opened on May 2, 1977, and the Town received eleven bids. Each was evaluated on the total of the nineteen items. Included as one of the bid items was Item 19, which called for the "Tunneling Jack" installation of 320 linear feet of 30-inch diameter reinforced concrete pipe under the New York State Thruway. Also included on the bid form was Item 19a, an alternative bid item which allowed the bidder to design its own method for crossing the Thruway. At issue here is bid Item 19a.

Using its alternate Item 19a bid price in place of its Item 19 amount, Darling's bid was the apparent low bid. Darling's Item 19a called for a 48-inch carrier pipe to be installed by a jacking method without a casing pipe. However, bid Item 19a required bid proposals to be based upon ". . . methods which have been reviewed and accepted by the Thruway Authority." On May 13, 1977, the Thruway Authority denied approval for the use of Darling's proposed 19a crossing method because no casing pipe was to be used. Thereafter, on May 25, 1977, Darling submitted a drawing to the Authority which showed the proposed use of a 42-inch fibreglass reinforced plastic mortar carrier pipe within a 48-inch reinforced concrete casing. This drawing was approved by the Thruway Authority.

On May 31, 1977, the Town decided to accept Darling's Item 19a, and accordingly made a conditional award of the contract to Darling based on its alternate bid price. Amadori, the second lowest bidder, protested the proposed award under E.P.A.'s bid protest regulations (40 C.F.R. § 35.939). It claimed that Darling's bid, including Item

19a, was irregular, and maintained that it should receive the award as the next lower bidder. The Town, on July 12, 1977, rejected Amadori's protest, finding that the Darling bid including Item 19a was the low responsive bid and that any problem with the Darling bid was "a technical non-compliance or a minor deviation or irregularity," which could be waived by the Town in the best interests of the municipality and the taxpayers.

On July 19, 1977, Amadori appealed its protest to the Regional Administrator of the E.P.A. Further action on the contract was deferred by the Town until resolution of the protest appeal. After holding a conference on August 4, 1977, at which the Town, Amadori, and Darling were present, and after reviewing various letters and documents submitted by the parties to the bid protest proceedings, Regional Administrator Eckardt C. Beck disapproved the award to Darling. In a decision issued August 31, 1977, he found that the submission of a revised crossing method by Darling so as to provide a casing pipe and thereby obtain approval from the Thruway Authority was a "post-bid modification" of its original bid, giving Darling "a competitive advantage that other bidders did not have," in violation of E.P.A. regulations and the basic principles of competitive procurement. His decision stated:

> I find that the new proposal of May 25, 1977 (approved by the Authority on June 13, 1977) was a post-bid modification of Darling's bid. The post-bid action by Darling was not merely the submission of existing objective data, which might be required to judge the acceptability of an equipment item. By providing Darling with an opportunity to modify its bid after bid opening by allowing the Drawing NE–100 revision to Item 19A to gain Authority approval, Darling was given a competitive advantage that other bidders did not have. There was not equal competition among bidders.
>
> Darling's bid, inclusive of Item 19A as submitted, was an unacceptable alternate bid, could not have been found responsive as of the time of bid opening and was dependent upon further approval action by a third party, the Authority, on the basis of a revised proposal to be submitted and technically justified by the bidder. If the bidder had not done so, the bidder's own actions or non-actions would have controlled whether or not the bid was responsive. It was not a firm bid at the time of bid opening because it was subject to modification during the bid acceptance period. The Grantee's engineer stated that in his opinion he could not decide whether Darling's Item 19A was acceptable at the time of bid opening. He would have to wait until the question of Authority approval was resolved. If Authority approval was not given (as happened in the first instance by the Authority's denial of Darling's request on May 13, 1977), the engineer believed that the bid could not have been automatically relieved of its bid.

Determination of Regional Administrator Eckardt C. Beck, Region II–No. 17, *In re Town of Cheektowaga,* Aug. 31, 1977, at 7 (footnotes omitted).

Following E.P.A.'s disapproval, the Town cancelled its conditional award of the contract to Darling and made a conditional award to Amadori. Darling then commenced this action against the Town of Cheektowaga, Amadori, Eckardt C. Beck (the Regional Administrator of Region II of the E.P.A.), and the New York State Department of Environmental Conservation. The complaint seeks various relief including an injunction against entering into or proceeding with a contract between the Town and Amadori, a reversal of the E.P.A.'s decision, and a contract award to Darling.

On its motion for a preliminary injunction, Darling contends that the Regional Administrator's decision was arbitrary and capricious, and that preliminary relief is essential to prevent irreparable injury. It argues that the 19a requirement that the proposed crossing method be accepted by the Thruway Authority did not mean express approval before bid submission but only conformity to past practices of the Authority in granting permits for Thruway

crossings, and that common practice and custom in the Buffalo area called for approval by the Thruway Authority of proposed methods of crossing the Thruway only after bids were opened. Darling also contends that it was bound by its original bid to design an acceptable method of crossing the Thruway without increasing its price and therefore its switch to pipe with casing did not constitute a post-bid modification giving Darling a competitive advantage over other bidders.

The defendants oppose plaintiff's motion for a preliminary injunction, and move for summary judgment on the ground that the Regional Administrator's decision had a rational basis. Since the court is prepared to rule on the merits of the case at this time, the arguments unique to the question of preliminary relief will not be addressed.

The question before the court on the defendants' motion for summary judgment is whether the Regional Administrator's decision disapproving the proposed award to Darling had a rational basis. *M. Steinthal & Co. v. Seamans*, 147 U.S.App. D.C. 221, 455 F.2d 1289 (1971). This standard of review is designed to ensure that judicial deference is given to the well-reasoned decisions of E.P.A. officials in interpreting the agency's own procurement and contracting regulations. *Id.* 147 U.S.App. D.C. at 230, 455 F.2d at 1298. A court may not set aside agency action solely because it would have interpreted the bidding procedures or the regulations differently had it made the initial determination.

I have carefully reviewed the full record in this case, and find no basis for setting aside the Regional Administrator's decision. The decision reflects thoughtful consideration of the factual background and the parties' positions, and it provides a reasoned explanation of the decision disapproving the award to Darling.

The dispute between Darling and Amadori revolves around two issues: whether the Town's requirement that Item 19a methods be "reviewed and accepted by the Thruway Authority" contemplated express approval by the Thruway Authority before bids were opened, and whether Darling's second pro-

posal for Item 19a was a post-bid modification giving Darling a competitive advantage over other bidders. As the Regional Administrator's decision demonstrates, these questions call for interpretation of the E.P.A. regulations and the bidding procedures used by the Town in light of the factual setting of the case. These types of interpretive functions are within the unique province of the agency, and will not be preempted by the court.

The plaintiff concedes that the applicable standard of review in this case is a narrow one. Brief of plaintiff at 4–5. But rather than providing convincing reasons why the Regional Administrator's decision was arbitrary or irrational, the plaintiff has merely restated to this court the arguments rejected by the Regional Administrator. The court finds no grounds for reversing the decision.

Accordingly, the defendants are entitled to summary judgment and the plaintiff's motion for preliminary relief is denied.

So ordered.