SCHIAVONE CONSTRUCTION CO.,
INC., Plaintiff,

v.

Charles SAMOWITZ, as Commissioner of The New York City Department of Environmental Protection, Grow Tunneling Corp., MacLean Grove & Co., Inc., Morrison-Knudsen Company, Inc., Peter Kiewit Sons' Co., Andrew Catapano Co., Inc., a joint venture of corporations and Eckardt C. Beck, as Regional Administrator for Region II of the United States Environmental Protection Agency, Defendants.

No. 77 Civ. 4788.

United States District Court,
S. D. New York.

Jan. 20, 1978.

Carter, Ledyard & Milburn, New York City by Jack Kaplan, New York City, for plaintiff.

Allan G. Schwartz, Corp. Counsel, New York City by Theodore Gilbert, New York City, for defendant Samowitz.

Berman, Paley, Goldstein & Berman, New York City by Murray Berman, Tony Berman, New York City, for defendants Grow Tunneling Corp., MacLean Grove & Co., Inc., Morrison-Knudsen Company, Inc., Peter Kiewit Sons' Co., Andrew Catapano Co., Inc.

Robert B. Fiske, Jr., U. S. Atty., New York City by Anne Sidamon-Eristoff, Asst. U. S. Atty., New York City, for defendant Beck.

## MEMORANDUM DECISION

STEWART, District Judge:

The plaintiff, Schiavone Construction Co., challenges the award of a contract by the New York City Department of Environmental Protection to the defendant corporations, a joint venture which I shall refer to as "Grow". Schiavone claims that it, not Grow, was the low bidder on the contract. The facts are undisputed.

The contract is for the construction of an interceptor sewer, part of a court-ordered water pollution control project to serve the Red Hook section of Brooklyn, in New York City. Pursuant to section 202 of the Federal Water Pollution Control Act, 33 U.S.C. § 1281 *et seq.*, the United States Environmental Protection Agency awarded a construction grant to the City of New York on May 31, 1977 in the amount of $51,361,620, which represents 75% of the total estimated project cost.

As was its obligation under the applicable federal regulations and state law, the City as grantee advertised for bids on the contract, Contract 1A. Three bids were received and opened on September 15, 1977, and the "Total Aggregate Bid" line at the end of each bid form was read aloud. The low bidder at that time was Schiavone, with a "Total Aggregate Bid" of $61,891,521. The next lowest bidder was Grow, with a "Total Aggregate Bid" of $61,962,009. Schiavone's bid was low by $70,488.

After the bids were opened, but on the same day, the City reviewed the bids and found a discrepancy in Grow's bid: the "Total Aggregate Bid" amount did not equal the sum of the 77 sub-bid items. The City notified Grow that a discrepancy had been found and requested that Grow check its arithmetic. It is noteworthy here that Grow did not approach the City seeking to correct its error, but that the opposite occurred. By telegram that same day, Grow stated that there was indeed an error in its arithmetic and that a recomputation revealed a correct "Total Aggregate Bid" of $61,862,009, $100,000 less than the Grow bid originally read. With this correction, Grow displaced Schiavone as the low bidder by $29,512, and the City, proposing to award the contract to Grow, informed Schiavone on September 16, 1977 that its Engineer

Audit showed Grow as the low bidder. Pursuant to 40 C.F.R. 35.939, Schiavone protested the City's action on September 21, 1977. The protest proceeded, with a stop in this Court along the way, and on November 1, 1977, the City issued its determination denying Schiavone's protest, finding Schiavone's "nagging worry" as to the possibility of fraud "frivolous", and that "the City's action in correcting the error was proper [and] in accordance with the contract provisions." Schiavone filed its protest appeal with EPA on November 7, 1977, alleging violations of various EPA procurement regulations, and on January 12, 1978, the EPA upheld the City's determination and approved the award of the contract to Grow. The EPA decision found that Grow made a "simple mathematical error in incorrectly adding the bid items and that this is the most logical explanation of what occurred." The Regional Administrator of the EPA also found in his decision that the error was obvious and readily discoverable within the four corners of the bidding document. Finding as a matter of logic that the intent of the bidder (Grow) was that the bid amount should be the total of the sub-bid items, the Administrator found the City's determination to have a rational basis and to be consistent with State law and with the EPA procurement regulations. The correction was found to be rationally founded and the contract award to Grow was approved. It is from this decision that Schiavone now appeals to this Court.

Schiavone now seeks a temporary restraining order and a preliminary injunction enjoining the City from awarding the contract to Grow, and enjoining EPA from allocating or disbursing any funds to the City in connection with this project. The TRO was denied on January 16, 1978. Schiavone further seeks the order of this Court that it be declared the low, responsive, responsible bidder, and that the City award the contract to Schiavone. The defendants have moved for summary judgment. Since this Court's review is of the record before the EPA and therefore there are no issues of fact, I turn to the law involved in this case.

A District Court's review of a procurement decision of a federal agency is a narrow one: an agency's decision will be overturned only if there is no rational basis for the decision. *M. Steinthal & Co. v. Seamans*, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1301 (1971). This is so because of the strong public interest in avoiding disruptions in the procurement process. That interest may be overridden only in cases where it clearly appears that the public interest in requiring agencies to follow government contracting regulations is stronger than the interest in avoiding the disruptions resulting from litigation. *M. Steinthal & Co., supra*, 147 U.S.App.D.C. at 242, 455 F.2d at 1300. Further, as Judge Lasker recently stated in *Union Carbide Corp. v. Train*, 73 F.R.D. 620 (S.D.N.Y. 1977), matters involving contract interpretation and the application of procurement regulations to bidding procedures are better left to those familiar with the realities of the procurement-contracting process, than to a simple comparison of the contract provision and the regulation by an untutored eye. A similar deference to the EPA's judgment was exercised in *Darling v. Beck*, 442 F.Supp. 978 (W.D.N.Y.1977), where the court held that the interpretation of the EPA regulations and of the bidding procedures used by the Town were best made in the factual setting of the case, by the EPA. Thus, the Court's role is not to examine the propriety of the challenged bidding procedure *de novo*, but only to decide "whether the decision of the EPA administrator upholding the contract award was or was not without rational basis." *Union Carbide Corp. v. Train*, 73 F.R.D. 620, 1977 (Lasker, J.); *M. Steinthal & Co., supra*, 455 F.2d at 1301.

It is significant in this regard that in *Union Carbide* Judge Lasker considered that he was upholding an EPA decision that found the bidding procedure fair and equitable, even though technically wrong. Despite his misgivings about the wisdom of the EPA decision, Judge Lasker felt constrained to uphold it, since it could not be found to be without rational basis. With

this as background, the EPA decision in this case is reviewed.

It seems clear that the EPA's decision was not without rational basis. A review of the record before the EPA and of the EPA's decision reveals that the facts surrounding the bidding and correction of the bid were carefully weighed and considered by the EPA. Further, the decision is firmly based upon the applicable state law and federal regulations. Schiavone claims that the decision was based on an erroneous view of New York law, but the only cases it cites are cases that speak in general terms about fairness and the avoidance of even the appearance of corruption. The EPA Regional Administrator specifically found that the corrective action did not violate any principles of fundamental fairness, and that New York law would permit a correction to be made in these circumstances. Schiavone has pointed to no New York case, and the Court is aware of none, that would prohibit this correction. In fact, there is authority contrary to Schiavone's position that allows municipalities discretion in determining which bids to accept and which to reject. *See, e. g., Turnkey Const. Corp. v. City of Peekskill*, 51 A.D.2d 729, 379 N.Y. S.2d 133 (1976); *Warren Bros. Co. v. Craner*, 30 A.D.2d 437, 293 N.Y.S.2d 763 (1968).

■ The reasonableness of the EPA's decision is further bolstered by the language in the Information For Bidders, § 12(a), and in the footnote on page 7gg of the prescribed bid form. Section 12(a) reads:

(a) COMPARISON OF BIDS—Bids on Unit Price Contracts will be compared on the basis of a total estimated price, *arrived at by taking the sum of the estimated quantities of such item multiplied by the corresponding unit prices, and including any lump sum bids on individual items,* in accordance with the Engineer's Estimate of Quantities set forth in the Bid Form. (Emphasis added.)

Schiavone's interpretation of this provision would have the comparison of bids made solely on the basis of the total estimated price. The City found, and the EPA agreed, as does the Court, that this inter-

pretation ignores the italicized clause. The City's and the EPA's interpretation of section 12(a) is that the bids were to be compared on the basis of total estimated price arrived at by adding the individual bid items. The "bottom line", in other words, must conform with the figures of which it purports to be the sum. If this were not the case, a meaningful comparison of bids could not be made, and the bidder awarded the contract might not be the true low bidder, as Schiavone apparently is not here. *Lametti & Sons, Inc. v. City of Davenport, Iowa*, 432 F.Supp. 713, 716 (S.D.Iowa, 1975). This interpretation of section 12(a) appears completely reasonable and in furtherance, in good faith, of the public interest. As the EPA noted in its decision, a firm bid arrived at in this fashion removes the opportunity for the "two bites" about which Schiavone is concerned.

■ Turning to page 7gg of the prescribed bid form, the following language appears as a footnote to the "Total Aggregate Bid" amount:

In case of any discrepancy between the price in words and that in figures, the lowest price will be considered the price bid. *All extensions and additions are subject to audit.* (Emphasis added.)

Again, Schiavone relies on only part of the language and asserts that the first sentence of this footnote should be interpreted to etch in stone the "Total Aggregate Bid" amount as *the* bid. However, the very next sentence states that "All extensions and additions are subject to audit." The City interpreted this sentence (and the EPA did not disagree), to mean that the City reserved the power to audit the bid documents to assure the correctness of the addition. In view of the fact that Grow's error consisted only of an obvious mistake in adding one of the columns of extensions (Column B, the unit price column for installation and all other costs related to each sub-bid item), and since the unit prices and the extensions for each item were found to be correct, the City's action in correcting the error seems eminently reasonable and proper.

Under the limited review exercised by this Court, the EPA decision cannot be overturned as being without rational basis. As the EPA found, the corrective action was fair, "appropriate in the public interest and in the interests of competition in the particular circumstances involved, [and] based upon the good faith determination by the grantee to make an award in accordance with State law and what can reasonably be discerned as the bidder's true intent." *In re: Department of Environmental Protection, City of New York*, EPA, Region II, January 12, 1978. The Court sees no reason to disturb these findings. Summary judgment is therefore granted.

Since the defendants' motion for summary judgment is granted, plaintiff's amended complaint is dismissed and its motion for a preliminary injunction is denied.

SO ORDERED.