DONMI OF MILFORD, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; Waterbury Housing Authority, City of Waterbury, Connecticut; Waterbury Redevelopment Agency; Bessoni Brothers, Inc., Defendants.

Civ. No. N–82–398.

United States District Court, D. Connecticut.

June 23, 1983.

Daniel Y. Sachs, New Haven, Conn., for plaintiff.

Barry Stevens, Asst. U.S. Atty., Bridgeport, Conn., for defendant U.S. Housing & Urban Development.

## INTERIM RULING ON MOTION TO DISMISS

EGINTON, District Judge.

This dispute arises from the award by the Waterbury Public Housing Authority ("PHA") of a contract for a federal housing project. The defendants have moved to dismiss this action, arguing that the plaintiff is without standing, that this court lacks subject matter jurisdiction, and that the plaintiff has failed to state a claim upon which relief can be granted. For the reasons set forth below, the defendants' motions must be denied.

*Factual Background*[1]

On February 17, 1982, the PHA solicited proposals for the construction of 21 units of family housing, to be purchased by the PHA under the federal "turnkey" program, as described at 24 C.F.R. § 841.102(b). The units were to be constructed on land owned either by the City of Waterbury, Connecticut, the Waterbury Redevelopment Agency, or both.

The solicitation of proposals included a section dealing with "Special Requirements for Turnkey Projects in Waterbury," which required compliance "with all Waterbury and Connecticut Codes [and] Minimum Property Standards for Multi-Family Housing ... except where the standards set forth in this architectural program exceed the Minimum Property Standards." Paragraph 5 of these Special Requirements stated that "[i]n each unit, all bedrooms shall be large enough for double occupancy under Waterbury Code (120 square feet of clear floor space)."

Nine proposals were submitted to the PHA by the March 19, 1982, deadline. The PHA rejected seven of these as unresponsive, leaving the plaintiff, Donmi of Milford, Inc., ("Donmi"), and Bessoni Brothers, Inc., ("Bessoni") as the only eligible developers. The PHA staff ranked Donmi's proposal first, when measured against predetermined criteria. On April 17, 1982, the PHA Board of Commissioners voted to transmit its recommendation to HUD that Donmi be awarded the contract.

HUD's Hartford Field Office staff reviewed Donmi's proposal, and concluded that Donmi was not in compliance with the Minimum Property Standards in three respects. Two of these objections were later withdrawn, but the proposal was held to be in noncompliance in that 2 of the 3 bedrooms in the three-bedroom unit showed net floor areas of less than 120 feet. The proposal was therefore "unresponsive" and the PHA was told to "amend its ranking" before June 18, or face the loss of funds set aside for the project. The PHA then withdrew its recommendation of Donmi and, on July 8, recommended Bessoni in its place.

Donmi does not dispute the fact that the bedrooms in question in its proposal are less than 120 square feet in size. Instead, it argues that the Waterbury building code does not require 120 square feet of area for double occupancy, and that is therefore in compliance with project standards. HUD

---

1. For purposes of this review, the facts as alleged in plaintiff's complaint will be taken as true. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

continues to insist on the requirement of 120 square feet of clear floor space.

Donmi also alleges that its own review of Bessoni's plans and specifications reveals not less than 15 instances of noncompliance with HUD Minimum Property Standards, state codes, and PHA requirements. Donmi therefore concludes that there was no rational basis either for its disqualification, or for the designation of Bessoni as developer, and that, in the absence of such a rational basis, HUD's actions were arbitrary and capricious, and an abuse of HUD's discretion.

Donmi filed its complaint in this action on August 13, 1982, seeking a declaration that its proposal was responsive to the invitation for proposals, and that the Bessoni proposal was not responsive, and injunctive relief barring award of the contract for this turnkey project to Bessoni. Donmi has not sought an order awarding it the contract; it seeks instead only to force the defendants to consider the bids in what it considers a rational and fair manner.

On September 17, 1982, the United States moved to dismiss for lack of standing and lack of subject matter jurisdiction, and the other defendants later joined in that motion. On December 23, 1982, this court issued an interim ruling with suggestions for further briefing. On December 28, 1982, the United States filed an additional motion to dismiss under Rule 12(b)(6) for failure to state a claim. Rulings on these motions were delayed at the request of the parties pursuant to settlement negotiations. Those negotiations having faltered, the court now considers the three grounds for dismissing this action advanced by the defendants.

I) DONMI HAS STANDING TO SUE.

■ The defendants challenge Donmi's standing as a disappointed bidder to sue under the Administrative Procedure Act, 5 U.S.C.A. §§ 701, et seq. ("the APA"). The Second Circuit has twice refused to address the question whether the APA alone confers standing or whether some other applicable federal statute or regulation must grant standing. *Spencer, White & Prentis*

*v. United States,* 641 F.2d 1061, 1065–66 (2 Cir.1981); *Morgan Associates v. U.S. Postal Service,* 511 F.2d 1223, 1225 n. 3 (2 Cir. 1975). The majority rule, enunciated with an extended analysis in *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir. 1970), holds that standing may be based on the APA without reference to any other statute. The Third, Fourth, Fifth, Seventh and Ninth Circuits have followed this rule. (See cases cited in *Spencer, White, supra,* 641 F.2d at 1065.) Only the Sixth Circuit has rejected the *Scanwell* rule. *See Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080 (6th Cir.1975).

The Second Circuit did not have to decide in *Morgan Associates, supra,* whether the more liberal *Scanwell* rule should be adopted in this Circuit because the merits of that case were obviously weak and the case required speedy disposition. In *Spencer, White* even the strict *Cincinnati Electronics* test was met.

Donmi argues that bidding procedures such as those promulgated by HUD for this turnkey project are designed in part to ensure that "no one competitor gets the edge on the others by shortcutting those standards," Plaintiff's brief at 15, citing *Budike v. Klutznick,* 510 F.Supp. 970 (D.Pa.1981). Donmi seems to imply that these HUD application procedures are the kind which can confer standing for review under the APA, under even the strict Sixth Circuit test.

If this were a correct interpretation of *Cincinnati Electronics,* every disappointed bidder for a government project or contract would have standing to seek review of agency action. That is precisely what the Sixth Circuit refused to hold. *See Cincinnati Electronics, supra,* 509 F.2d at 1086.

Thus, if Donmi is to be given standing here, it can only be under the more liberal *Scanwell* rule. This court is persuaded by Judge Tamm's scholarly and well reasoned opinion in that case and holds that Donmi does have standing to sue.

II) THIS COURT HAS FEDERAL QUESTION JURISDICTION.

■ The plaintiff originally urged this court to find jurisdiction under any or all of

the following statutes: the Tucker Act (28 U.S.C. § 1346); the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202); the Administrative Procedure Act; the "sue and be sued" provisions of 42 U.S.C. § 1404a; and the "federal question" statute, 28 U.S.C. § 1331. Donmi has since withdrawn its jurisdictional claims under the first four of these statutes and seeks to proceed only under the federal question statute.

The basic question posed by the complaint in this action is whether the defendants (especially HUD) were arbitrary and capricious in refusing to award this turnkey project to Donmi, and in awarding it instead to Bessoni. The court must decide whether this question "arises under" federal law and is therefore one over which § 1331 jurisdiction exists.

At this early stage of the case, it is not to be expected that Donmi will have precisely formulated the theories upon which it will proceed. In so far as the court can determine for purposes of this jurisdictional dispute, Donmi claims two possible bases for the court to find issues which "arise under" federal law. First, there is a question of whether the prohibition against "arbitrary and capricious" agency action in § 10 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, applies to this case. Second, Donmi suggests that various housing statutes and regulations implicate a federal question.[2] Because this court concludes that Donmi has a cause of action "arising under" the APA, it will not evaluate the claimed cause of action under the housing statutes.

The court agrees that:

The most difficult single problem in determining whether federal question jurisdiction exists is deciding when the relation of federal law to a case is such that the action may be said to be one "arising under" that law.

The meaning of this phrase has attracted the interest of . . . giants of the bench . . . and has been the subject of voluminous scholarly writing. Even so it cannot be said that any clear test has yet been developed to determine which cases "arise under" federal law.

13 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3562 at 397–8 (1975) (footnotes omitted).

■ Case law requires this court to ask at least three questions to determine whether an alleged cause of action "arises under" federal law. First, the court must determine whether it is the type of allegation which may serve as the basis for federal question jurisdiction. *See, e.g.,* Wright, Miller & Cooper, *supra,* § 3563. The Supreme Court held, in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that the APA can serve as the basis for federal question jurisdiction, though the APA is not an independent jurisdictional predicate. *See also Chrysler Corporation v. Brown,* 441 U.S. 281, 317 n. 47, 99 S.Ct. 1705, 1725 n. 47, 60 L.Ed.2d 208 (1979).

The second question to ask is whether a plaintiff's allegation is so clearly meritless under existing law that no substantial federal question exists. *See, e.g., Hagans v. Lavine,* 415 U.S. 528, 536–7, 94 S.Ct. 1372, 1378–1379, 39 L.Ed.2d 577 (1974); *Port Authority Bondholders Protective Committee v. Port of New York Authority,* 387 F.2d 259, 262 (2d Cir.1967); Wright, Miller & Cooper, *supra,* § 3564.

The issue here must be distinguished from a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The two lines of analysis—dismissal for want of a substantial federal question and dismissal for failure to state a claim—come very close, but the threshold of review differs somewhat between the two. It must be more clear that the allegations are without merit to dismiss for lack of § 1331 jurisdiction than to dismiss under Rule 12(b)(6). *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776–777, 90 L.Ed. 939 (1945).

*Cf. Ghent v. Lynn,* 392 F.Supp. 879 (D.Conn. 1975).

---

**2.** Donmi has withdrawn its earlier claim that federal common law grants jurisdiction whenever the United States is a party to an action.

The question of whether the complaint should be dismissed under Rule 12(b)(6) will be reviewed below. Since the conclusion there is that Donmi has stated a claim upon which relief can be granted, the claim is obviously sufficient for jurisdictional purposes.

Finally, if an allegation is of the general type which can serve as the basis for subject matter jurisdiction and is not so thoroughly settled as to be insubstantial, the court must address the amorphous question of whether that issue is basic to the case. *See, e.g., North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233 (2nd Cir.1978) ("The court must ascertain from the complaint whether federal law is a pivotal issue in the case, one that is basic in the determination of the conflict between the parties."). *See also Gully v. First National Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 99–100, 81 L.Ed. 70 (1936); *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974).

■ One test of whether a federal question is pivotal is to ask whether a claimed right is supported by one construction of federal law and defeated by a contrary construction. *Gully v. First National Bank, supra.* The mere fact that the Constitution or a federal law must be interpreted or applied in the course of a case does not give rise to federal question jurisdiction. The right or immunity out of which the cause of action arises must itself have been federally created or granted, *Giba v. International Union of Electrical, R. & M. Workers,* 205 F.Supp. 553, 555 (D.Conn.1962), or, if the cause of action arises under state law, an important question of federal law must be an essential element of the case, *Sweeney v. Abramovitz,* 449 F.Supp. 213, 214–15 (D.Conn.1978).

The defendants argue that federal law is only indirectly implicated here and urge that this court dismiss the case for that reason. However, the court has no doubt that the provisions of the APA barring arbitrary and capricious action are at the core of this lawsuit. Certainly, there will be extended discussion of whether the Waterbury Code requires that the two bedrooms in question have 120 square feet of room, whether HUD's solicitation of proposals required 120 square feet in the bedrooms regardless of what the Waterbury Code requires, and whether the 15 instances of noncompliance allegedly to be found in the Bessoni proposal actually exist and are material, none of which appear to be issues of federal law. However, these technical questions go to whether HUD acted arbitrarily under the APA, and that is a question "arising under" the laws of the United States.

This is not a case like *American Science & Engineering, Inc. v. Califano,* 571 F.2d 58, 61 (1st Cir.1978), *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1974), or *Metadure Corp. v. United States,* 490 F.Supp. 1368, 1371 (S.D.N.Y.1980), all cited by defendants, in which plaintiffs spuriously characterized their contract disputes as ones arising under the APA, in an attempt to confer jurisdiction on the federal court. Donmi is not alleging that the defendants violated the APA because they violated contract law. Instead, Donmi alleges that the defendants acted arbitrarily in awarding the contract to Bessoni.

Nor is this case like *Orleans v. United States,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), *Correlated Development Corp. v. United States,* 214 Ct.Cl. 106, 556 F.2d 515 (Ct.Cl.1977), *Ippolito-Lutz v. Harris,* 473 F.Supp. 255 (S.D.N.Y.1979), and others cited by the defendants which involved attempts by plaintiffs, in suits in tort or breach of contract, to fasten liability derivatively on the United States rather than on the agency with which they had contracted or whose agents committed the tort. Here, Donmi is seeking injunctive relief against HUD (and the other defendants incidentally) to prevent HUD itself from acting in an allegedly illegal manner.

The court therefore has jurisdiction to consider injunctive relief under the APA in this case.

## III) DONMI HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

■ It is axiomatic that a 12(b)(6) motion is to be granted only "if it appears beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). At the heart of this dispute is the question whether a disappointed bidder such as Donmi has stated a cause of action for injunctive relief where it alleges the government acted arbitrarily and capriciously.

In *Califano v. Sanders, supra*, 430 U.S. at 105, 97 S.Ct. at 984, the Supreme Court held that the "obvious effect" of the 1976 Amendments to the APA was to confer jurisdiction on federal courts to review agency action, subject only to preclusion of review statutes created or retained by Congress. It seems equally obvious that, more than just conferring jurisdiction, the APA creates a right of action for injunctive relief here. This is the only sensible meaning to Section 10(e) of the APA, 5 U.S.C.A. § 706, which authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *See, e.g., Lehner v. United States*, 685 F.2d 1187, 1190 (9th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983) (though plaintiff there failed to state a claim, court recognized that APA provides authority for equitable relief against federal agency or officer); *Sea-Land Service, Inc. v. Brown*, 600 F.2d 429, 433 (3d Cir. 1979) ("Enjoining the performance of a contract if the award was the result of procedures not comporting with the law is clearly within the district court's jurisdiction."); *Scanwell Labs, supra*, 424 F.2d at 874 (recognizing cause of action to challenge arbitrary and capricious action). *See also Merriam v. Kunzig*, 476 F.2d 1233, 1242 (3d Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *Continental Business Enterprises, Inc. v. United States*, 452 F.2d 1016, 1019 (Ct.Cl.1971); *Budike v. Klutz-*

*nick,* 510 F.Supp. 970, 976 (D.Pa.1981) (all holding that the government has a duty to deal fairly with bidders for its contracts, either because the agency has the power to bind bidders to the terms of their bids, or because such a rule is in the public interest). *Cf. Spencer, White & Prentis v. United States, supra*, 641 F.2d at 1066–67 (while concluding that the government had not been arbitrary, the court impliedly recognized the right to seek a remedy for arbitrary and capricious agency action).

This conclusion is also supported by the standing cases discussed earlier; implicit in each of those opinions is a recognition of a cause of action for injunctive relief under the APA in this situation.

The defendants argue that in rejecting as without merit the plaintiff's APA claim in *T.M. Systems v. United States*, 473 F.Supp. 481 (D.Conn.1979), Judge Burns set a precedent which this court should follow, if only for the sake of uniformity within the district. That conclusion is based on the following portion of Judge Burns' opinion:

> Plaintiff cites, and the Court finds, no regulation which could be construed to grant a right in the disappointed bidder to be awarded a contract which was improperly awarded in the first instance. Similarly, the court reads *Califano's* holding that § 10 of the APA does not grant subject matter jurisdiction as implying that § 10 also does not grant to the disappointed bidder any right to the improperly awarded contract. *Scanwell, supra,* is not to the contrary. The court there, while holding that the disappointed bidder had standing to challenge agency action, recognized that the bidder had no right to the contract in the event the original award was found illegal. 424 F.2d at 864. Apparently the *Scanwell* court found nothing in the APA or the procurement regulations to confer a right or immunity on the bidder which would be sufficient to meet the Supreme Court's time-honored test for finding a federal question. This court agrees.

*T.M. Systems, supra,* 473 F.Supp. at 486.

Judge Burns' ruling is not controlling here. Donmi concedes that this court can-

188

not order the defendants to award it the turnkey project, and seeks only an injunction against arbitrary action. The opinion in *T.M. Systems* did not specifically address the availability of such relief. Furthermore, this court reads the *Califano* and *Scanwell* cases differently from the apparent interpretation of Judge Burns. While those cases do not recognize a right in Donmi to specific performance relief, they do find jurisdiction and imply a right to injunctive relief.

For all the foregoing reasons, defendants' motions to dismiss are denied.

## IV) PRELIMINARY INJUNCTIONS ARE RARELY ISSUED IN THIS SETTING.

Plaintiff may now renew its request for a preliminary injunction. Plaintiff should clearly understand, however, that an injunction against a public project is not lightly granted. If the government shows any rational basis for its decision, the court will not issue an injunction. *See, e.g., Sea-Land Service, Inc. v. Brown, supra,* 600 F.2d at 434; *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973); *Textron, Inc. v. Adams,* 493 F.Supp. 824, 828–830 (D.D.C.1980); *Schiavone Construction Corp. v. Samowitz,* 451 F.Supp. 29, 31 (S.D.N.Y.), *affirmed mem.,* 578 F.2d 1370 (2d Cir.1978). In such a setting, the balance of hardships often tips in favor of the public interest in continuing construction, and against the plaintiff's interest in relief. *See, e.g., Fairplan Development Co. v. Freeman,* 512 F.Supp. 201, 204 (D.Ill.1981). It is also possible that Donmi has an adequate remedy at law, since the court can order that it be reimbursed for the costs of bid preparation. *Ibid,* at 203–204.

The court will entertain evidence and hear argument on each of these points at a preliminary injunction hearing, to be scheduled at the earliest time counsel and court schedules permit.

SO ORDERED.