LONGO–PUERTO RICO, INC., a corporation of the State of New Jersey, Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Region II, Jacqueline E. Schaefer, Regional Administrator of the United States Environmental Protection Agency, Region II, and the Puerto Rico Aqueduct and Sewer Authority, Defendants.

Civ. No. 83–2654 HL.

United States District Court, D. Puerto Rico.

Nov. 28, 1983.

Steven C. Lausell, Jiménez & Fusté, San Juan, P.R., William A. Feldman, Feldman & Feldman, Clifton, N.J., for plaintiff.

Julio A. Nolla, San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, LONGO–PUERTO RICO, INC. (LONGO) filed this action seeking injunctive relief, declaratory relief and review of a decision of the Regional Administrator, Region II, United States Environmental Protection Agency (EPA). Following a denial of plaintiff's motion for a temporary restraining order, a consolidated hearing on a preliminary and permanent injunction was held on November 21, 1983. The Court has carefully considered the documents submitted by the parties, affidavits, the briefs, and oral arguments of counsel. For the reasons stated below, LONGO's petition for preliminary and permanent injunction is denied and summary judgment is granted to the defendants.

## THE FACTS.

On September 29, 1979, EPA awarded a Grant to the Puerto Rico Aqueduct and Sewer Authority (PRASA) for the construction of the Torrecilla Trunk Sewer and Force Main (Part I), and Dislodge Transfer Line (Part B), Grant No. C–72–94–10 under Title II of the Clean Water Act, 33 U.S.C. Section 1281, et seq., in the amount of $9,617,015 representing 75% of the estimated Grant eligible costs of the construction project, the total cost of which was $14,822,686.

On May 6, 1981, PRASA opened bids for the contract concerning the construction portion of the grant. On May 22, 1981, the bid recommendation committee of PRASA recommended to the Board of Awards that the contract be awarded to LONGO. On May 28, 1981, the Board of Awards of PRASA concurred with the recommendation of the bid recommendation committee and recommended to the Executive Director of PRASA that the bid be awarded to LONGO. On June 2, 1981, the Executive Director of PRASA approved the recommendation of the Board of Awards. Acting on behalf of EPA, the Department of the Army Corps of Engineers approved PRASA's award on July 31, 1981.

A formal notice of award was not given to LONGO and a written contract was not signed because PRASA was unable to pay the share of the cost of the contract which it was committed to pay under the terms of the Grant agreement between PRASA and EPA. Due to the gravity of PRASA's financial problems, EPA determined that PRASA did not possess and would not acquire in the near future the necessary financial resources to initiate construction of the project. EPA, therefore, commenced termination of the grant for failure to initiate construction within twelve months of grant award as required by 40 CFR 35.935–9(c). Upon termination of the grant, the deobligated funds were treated as fiscal year 1982 funds, which allowed PRASA an extra year until September 30, 1983, to reobligate said funds or lose them.

By Congressional action, financing was made available authorizing EPA to make loans to PRASA for the non-federal costs of this Grant including other grants related to five major PRASA waste treatment projects, Public Law No. 97–357, 33 USC Sec. 1282(c). Congress was concerned about Puerto Rico's inability to meet its non-federal payment requirements because of circumstances beyond its control, which circumstances put in jeopardy $30 million in unobligated federal funds. Under the Congressional scheme to aid Puerto Rico, the Island could use said funds to finance

the non-federal share of five treatment projects currently under construction, but must repay that sum, with interest, to EPA.[1]

EPA and PRASA began immediately to make arrangements to utilize the authority for the loans. On March 17, 1983, EPA and PRASA entered into an agreement concerning 24 separate grant projects with a maximum loan amount available of $42,-497,323. Having EPA and PRASA agreed to terms in connection with the EPA loan commitment, and since the amendment to the statute required that all loans be made by September 30, 1983, the Director of the Water Management Division of EPA's Regional Office, Mr. William J. Muszynski, notified PRASA by letter dated March 8, 1983, that all of the contracts proposed in the financial plan would have to be formally advertised and awarded through the competitive bidding process, as a condition for the loans, even though bids were received for some of said contracts many months ago.

Meanwhile, since November 23, 1982, LONGO had advised PRASA that it was willing to perform the contract if it was awarded to it because funding would be available.[2] On numerous occasions after June 2, 1981, when the Executive Director of PRASA approved the recommendation of the Board of Awards that the bids be awarded to LONGO, plaintiff had corresponded, met and discussed with PRASA its lack of matching funds to undertake the projects. LONGO even offered to finance PRASA's matching funds process by either purchasing bonds or some mutually beneficial method of financing. This was reject-ed by PRASA. Other correspondence had ensued between LONGO and PRASA. LONGO always asserted its willingness of constructing the Torrecilla Trunk Sewer. During all this time, PRASA represented to LONGO that the Torrecilla project would be awarded to said firm. Consequently, LONGO assumed that it had an entitlement to the contract and incurred in substantial expenses in connection thereto.[3]

Following EPA's requirement as a condition for the commitment of funds to PRASA, the Executive Director of PRASA, Mr. Wilson M. Loubriel, wrote LONGO on April 14, 1983, advising that: "According to the conditions included in the loan agreement between EPA and this agency, the award of this project to the company cannot be granted because all projects within this agreement have to be formally advertised and awarded through the competitive bidding process even though bids were previously received for some of these projects. It was also agreed that if the new bids are higher than the previously received, EPA would participate in the additional cost of the projects." Loubriel's letter further notified plaintiff that because there were three major revisions to the plans and specifications on the project, according to EPA regulations, PRASA could not negotiate with the lower bidder because they may proceed with the protest pursuant to 40 CFR 35.939. The revisions to the project included:

 a. deletion of Dislodge Transfer Line;

 b. a change in the proposal from unit price to lump sum basis; and

 c. the section of the Trunk Sewer crossing the proposed channalization of

---

1. Public Law No. 93–357 did not relieve Puerto Rico of its responsibility, but merely allowed it to use federal money, repaying it at a later date, with interest. If the amendment to the Federal Water Pollution Control Act were not adopted, the federal government would probably lose $180 million which had been expended for the federal share of these projects. Hence, the passage of the amendment effectively relieved the financial crisis then jeopardizing the waste water treatment program in Puerto Rico. Congressional Record, September 30, 1982, pp. S 12745, 12746.

2. Obviously, LONGO was keeping track of the amendment in Congress.

3. However, the formal notice of award was never issued, nor the construction contract executed. It may be safely said that if PRASA would have had the funds and EPA would not have required new bids, as a condition to commit the federal funds, LONGO would have been awarded the contract. The intervening circumstances—passage of time and modifications on the project—prompted EPA to request new bids.

Río Grande de Loíza was raised changing the item for excavation accordingly.

The letter closed with the invitation to LONGO to bid in the project that the Authority would advertise in the future.

Plaintiff protested under the procedure of EPA 40 CFR 35.939. Such procedures require that a protest be initially filed with and decided by the Grant recipient, in this case, PRASA. Having not received what it considered adequate response from PRASA, plaintiff requested EPA's review. EPA decided to hear the matter and thereafter the Regional Administrator issued her decision on the merits of the protest on October 18, 1983, finding that the protest was meritless on the grounds that the failure to award the contract in accord with the conditions of the bidding documents was based on good cause pursuant to 40 CFR 35.938–4(h)(2).[4]

### DISCUSSION.

■ The question before the Court on EPA's motion for summary judgment[5] is whether the Regional Administrator's decision, declaring that a new bid is required in order to insure open and free competition, is arbitrary and capricious because it is not included in the terms of the EPA Grant or loan agreement. In other words, whether the Regional Administrator's decision dismissing LONGO's protest has a rational basis. *Spencer, White & Prentis, Inc. v. U.S., etc.*, 641 F.2d 1061 (2nd Cir.1981); *CCTW & M v. U.S. Environmental Protection Agency*, 452 F.Supp. 69 (1978); *Herbert F. Darling, Inc. v. Beck*, 442 F.Supp. 978 (1977); *Schiavone Const. Co., Inc. v. Samowitz*, 451 F.Supp. 29 (1978).

The Court has carefully reviewed the full record in this case, and finds no basis for setting aside the Regional Administrator's decision. The decision reflects careful consideration of the factual background and LONGO's position. It provides a reasoned

explanation of the decision overruling LONGO's protest. Furthermore, EPA's determination is supported by substantial evidence on the record as a whole. While the reviewing court is obligated to conduct a searching and careful inquiry into the record, "the court is not empowered to substitute its judgment for that of the agency." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Plaintiff's claim of presumptive entitlement to the award of the contract rests on 40 CFR 35.938–4(h)(2). However, the intervening circumstances, i.e., the lapse of time, the modifications to the contract whereby the Dislodge Transfer Line was deleted; the proposal change from unit price to lump sum, and the raising of the section of the Trunk Sewer crossing the proposed channalization of the Río Grande de Loíza with the corresponding change in the excavation item, constitute good cause to require a rebidding.

The Court finds persuasive the Regional Administrator's determination that the contract was not awarded and the failure to do so was justifiable in August 1981, because PRASA could not be assured of having available the local financing to pay its share of the cost of projects like this one. In other words, that the lapse of the time period involved herein was clearly not the result of error or mismanagement in the bidding procedure on the part of PRASA. A two-year delay in awarding a contract because of the above mentioned circumstances is in the Agency's opinion just cause to require rebidding. As the Agency ruled, the passage of time, as well as the changes that PRASA proposed, eliminate the concern that new bids will be responses to LONGO's two-year old bid. Besides, LONGO's competitive position vis-a-vis other potential bidders, would not be harmed by an advertised procurement and is conso-

---

**4.** 35.938–4(h)(2) provides that: "The grantee may reserve the right to reject all bids. Unless all bids are rejected for good cause, award shall be made to the low, responsive, responsible bidder."

**5.** PRASA filed a motion to dismiss the complaint, which is hereby treated as a motion for summary judgment. Rule 12(c) of FRCP.

nant with the basic principles of competitive procurement.

While it is true that EPA's requirement that the project be readvertised aborted PRASA's earlier recommendation to award the contract to LONGO, the public interest in defraying the cost of federally-funded projects by promoting competition justifies EPA's decision.

Plaintiff's claim that the letter of March 8, 1983, from the Director of the Water Management Division of EPA's Regional Office requiring readvertisement as a condition to committing EPA's funds, divested them of their entitlement to the contract, is not persuasive. As stated in *CCTW & M v. U.S., supra,* at page 79:

> "Until actual acceptance of the contract, a bidder—even if he is the low bidder—has no vested interest in the contract for the government has the absolute right to reject all bids." (Citations omitted.)

LONGO may or may not be entitled to recoup the cost of preparing its bid based on EPA's requirements that the project be readvertised, but is not entitled to the contract. In *Sealand Service, Inc. v. Brown,* 600 F.2d 429, 434 (3rd Cir.1979), the Court admonished:

> "Judicial intervention in procurement disputes necessarily results in delay and expenditure of funds on behalf of all parties, usually without measurable benefit to the public. Although much must depend on the circumstances, by and large, the courts have recognized the necessity of exercising restraint when interfering with procurement decisions and of recognizing a large measure of discretion in the contracting officer ... A showing of clear illegality is an appropri-

ate standard to impose on an aggrieved bidder who seeks judicial relief."

LONGO's argument that EPA is unduly interfering with its contractual entitlement with PRASA, overlooks the fact that PRASA is under no obligation to apply for grant funds from EPA. Its obligation to comply with the treatment and discharge requirements of the Clean Water Act is completely independent of the receipt of any financial assistance from the Government. Only after Congress acted through Public Law 97-357 [6] to provide financing to the Puerto Rico projects was PRASA obliged to comply with all requirements and conditions of the construction grants program, including the readvertisement. *City of New Brunswick v. Borough of Milltown,* 519 F.Supp. 878 (1981). PRASA had no choice other than accepting the conditions imposed by EPA. Without financial aid, the project was not economically feasible, and hence, no contract could be executed.[7]

 Plaintiff invoked the jurisdiction of this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201. However, said statute does not provide an independent basis of jurisdiction. *Everlasting Development Corp. v. Descartes,* 192 F.2d 1 (1st Cir.1951); cert. den. 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709; *Potomac Passengers Ass'n. v. Chesapeake & Ohio Ry. Co.,* 520 F.2d 91 (D.C.Cir.1975). Plaintiff further relied on the Water Pollution Prevention Control Act, 33 U.S.C.A. § 1282. This statute implies no cause of action in favor of a party against EPA for tortious interference with contractual relations.

In view of our disposition of the claim that the bid readvertisement was supported by good cause, any federal basis for the pendent Insular claim [8] asserted by LON-

---

**6.** The Senate Congressional Record for September 30, 1982, page S 12746 is revealing, when Senator Chaffey stated: "The circumstances in Puerto Rico are truly extraordinary. This legislation is a one-time fixed and will allow Puerto Rico to complete needed facilities and protect the investment that already exists in these facilities to not be wasted."

**7.** PRASA obviously advertised for bids in the project under the belief that funds to finance the construction work were to be provided under an EPA grant. Subsequently, it learned that it would not be able to comply with the EPA grant requirements because of lack of matching funds. *Jaillet v. Hill & Hill,* 460 F.Supp. 1075 (1978).

**8.** In *Justiniano v. Commonwealth,* 100 PRR 333,

GO disappears and the third count of the complaint must likewise be dismissed. See, *Jaffee v. United States,* 592 F.2d 712 (3rd Cir.1979).

Accordingly, the defendants are entitled to summary judgment and the plaintiff's petition for injunctive relief is denied and the complaint dismissed.

SO ORDERED.

John M. Huff, Forest, Miss., Wayne E. Ferrell, Jr., Jackson, Miss., for plaintiff.

Eldon L. Bolton, Jr., Gulfport, Miss., for defendants.

339 (1971), the Puerto Rico Supreme Court noted: "It has been held that an agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into, since a contract is not binding on an agency until formal contract containing all the legal requirements for the performance of the work is executed in writing."